397 So.2d 1160 (1981)
Maye G. NEIL, Appellant,
v.
SOUTH FLORIDA AUTO PAINTERS, INC., a Florida Corporation, D/B/a Auto Painting Corporation of America, Appellee.
No. 79-2039.
District Court of Appeal of Florida, Third District.
April 28, 1981.
Rehearing Denied May 20, 1981.
*1161 Carl H. Hoffman and David Hertzig, Miami, for appellant.
Preddy, Kutner & Hardy and Stephen T. Brown, Miami, for appellee.
Before HUBBART, C.J., and BARKDULL and DANIEL S. PEARSON, JJ.
*1162 DANIEL S. PEARSON, Judge.
The issue presented for our review is whether certain causes of action brought in an independent suit by Neil against South Florida Auto Painters, Inc., doing business as Auto Painting Corporation of America (APCA), were of such a nature as to constitute compulsory claims which Neil was required to assert as counterclaims (or be thereafter barred from asserting) in either of two prior actions brought against her by APCA. The trial court determined that four counts of Neil's complaint alleging that APCA was liable in damages to her on account of assault and battery, false imprisonment, intentional infliction of emotional distress, and malicious prosecution[1] arose out of "the transaction or occurrence that [was] the subject matter" of APCA's prior claims, were therefore compulsory counterclaims, and were now barred. See Fla.R.Civ.P. 1.170(a). Accordingly, the trial court dismissed these counts of Neil's complaint.[2] We reverse the dismissal of the count charging malicious prosecution and otherwise affirm the ruling of the trial court.

I.

The Transaction Or Occurrence.
In early May 1975, APCA agreed to paint Neil's car in consideration of Neil paying $109.15. The paint job was completed in several days, and Neil came to APCA's garage for her car. The paint job was not to Neil's liking, and she told APCA's employee, whom she thought to be the manager, that she would not pay for it. An ensuing heated discussion ended with Neil getting in her car. At that point, the employee reached in the car window and removed the key from the ignition. Neil took a duplicate key from her purse and started the car. The employee closed the front garage door to prevent Neil's departure. Neil turned her car around in an effort to exit from the open rear door. During the process, Neil's car struck and caused minor damage to two cars parked in the garage. APCA's employee shut the rear door. Angry words were again exchanged. The argument was interrupted by a knock on the front garage door. The employee answered the knock, opened the door, and went outside the garage. Neil turned her car around again and proceeded to drive out the front door. The employee stopped her by placing himself in front of Neil's car. When Neil revved the engine, the employee stepped aside. As Neil drove past him, the employee opened the driver's side of Neil's car, causing it to hit against the side of the garage. Neil finally drove away.

II.

APCA's Claim For Replevin.
Less than a month after Neil's hurried departure, APCA filed an action for replevin, seeking possession of the automobile which was, allegedly, wrongfully removed from its premises. Although the record of these replevin proceedings is sparse, we are able to glean from it two significant facts. First, it appears that APCA's replevin action was dismissed by the trial court on the ground that "the remedy at law under which plaintiff has chosen to sue is inappropriate under the circumstances." Second, it appears that APCA did not seek a personal judgment against Neil, but restricted its prayer for relief to a claim for possession of the car.
The significance, for present purposes, of the trial court's dismissal on the *1163 ground that the remedy of replevin was inappropriate is that such a dismissal, whether correctly entered or not, relieved Neil of the obligation, if any otherwise existed, to file a counterclaim to APCA's replevin action. As the court stated in Lawhorn v. Atlantic Refining Company, 299 F.2d 353, 356 (5th Cir.1962):
"... it is clear that a plaintiff must have a claim before a defendant is required to assert a compulsory counterclaim. A counterclaim must be pressed only when it is related to the ... subject matter of the opposing party's claim ... . When Atlantic's motion to dismiss was successful, it was a judicial determination that Lawhorn had no claim upon which relief could be granted. If there was no claim, no counterclaim was required." (emphasis in original).
Similarly, the trial court's dismissal of APCA's replevin action was a judicial determination that APCA had no claim upon which relief could be granted, and Neil was not compelled to file any counterclaim in response.
Alternatively, APCA's failure to seek a personal judgment against Neil in the replevin action made a counterclaim by Neil unnecessary. This exception to the compulsory counterclaim requirement is found in Florida Rule of Civil Procedure 1.170(a)(2):
"... the pleader need not state a claim if ... the opposing party brought suit upon his claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on the claim... ."
In its replevin action, APCA invoked only the in rem jurisdiction of the trial court, rendering a counterclaim by Neil unnecessary.[3]Cf. Baker v. Gold Seal Liquors, Inc., 417 U.S. 467, n. 1, 94 S.Ct. 2504, n. 1, 41 L.Ed.2d 243, n. 1 (1974) [in dictum, court stated that where only in rem jurisdiction is invoked, a counterclaim is not required under Federal Rule of Civil Procedure 13(a)].[4]

III.

APCA's Claim For Breach Of Contract And Damages Arising From Neil's Negligence.

A. The effect upon Neil's actions for assault and battery, false imprisonment, and intentional infliction of emotional distress.
Approximately two months after its replevin action was dismissed APCA sued Neil to recover the $109.15 which she agreed to pay for the paint job and for $55.00 in damages to the automobiles which were hit in APCA's garage during Neil's exit. Neil filed no counterclaim to this action.[5] The case went to trial, and judgment was entered in Neil's favor. Sometime later, Neil brought the suit which is the subject of this appeal.
Neil and APCA are in accord that the appropriate test for determining whether *1164 a counterclaim arises out of the transaction or occurrence which is the subject matter of the opposing party's claim, and is thus compulsory, is the "logical relationship" test.[6] The test, in modern form, is set forth in Revere Copper and Brass, Inc. v. Aetna Casualty and Surety Co., 426 F.2d 709, 715 (5th Cir.1970):
"... a claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant." (emphasis in original).
We agree that the test is an appropriate one, but as so readily appears from the decisional law and from the conflicting contentions of the parties here, stating the test is far easier than determining whether claims are or are not logically related.[7]
In making this determination, we must keep in mind that the goal of the compulsory counterclaim rule is "to prevent multiplicity of actions and to achieve a just resolution in a single lawsuit of all disputes arising out of common matters." Stone v. Pembroke Lakes Trailer Park, Inc., 268 So.2d 400 (Fla. 4th DCA 1972); 3 Moore's Federal Practice ¶ 13.12[1], at 13-273 (2d ed. 1980). Therefore, to achieve this goal, we must give the phrase "transaction or occurrence" a broad, realistic interpretation. Stone v. Pembroke Lakes Trailer Park, Inc., supra.
We find persuasive the Fifth Circuit's decision in United Broadcasting Company, Inc. v. Armes, 506 F.2d 766 (5th Cir.1975). In that case, Eaton, the equitable owner of a Mexican radio station, hired Armes, a private investigator, to assist in recovering legal title to the station and physical custody of his ward.[8] Armes experienced difficulties in collecting the promised investigative *1165 fees and allegedly engaged in the questionable collection methods of threatening to harm Eaton and the child. Ultimately, Armes filed a suit in a Texas Federal District Court to recover his fees. During the progress of that suit, Eaton filed suit against Armes in the District of Columbia Federal District Court for invasion of privacy and other torts. The Texas Federal Court enjoined the District of Columbia action. Eaton appealed. The Fifth Circuit, inter alia, affirmed the injunction, holding that Eaton's tort claims in the District of Columbia action arose out of the same transaction as Armes' contract claims and could only be brought as a counterclaim in the Texas Federal Court.
In contrast, but equally instructive, is Bohlender v. Oster, 165 Colo. 164, 439 P.2d 999 (1968), in which the court held that while Bohlender's counterclaim of assault and battery to Oster's like complaint arising out of a 1963 affray was clearly compulsory, Bohlender's additional counterclaims to enjoin Oster from interfering with irrigation and water rights which admittedly were based on unrelated events which occurred well prior to their fight were not compulsory counterclaims.[9]
In the present case, the acts of APCA's employee in preventing Neil from leaving the garage without paying for the paint job, out of which Neil's false imprisonment, assault and battery, and intentional infliction of emotional distress claims arose, and Neil's efforts to extricate herself from her captor, out of which APCA's claim for damage to other vehicles arose, are inextricably bound together. Thus, APCA's claim for the cost of the paint job and claim that Neil negligently damaged its vehicles arises out of the same aggregate of operative facts as Neil's claim that in pursuit of its money APCA, through its employee, falsely imprisoned her, committed an assault and battery upon her, and intentionally inflicted emotional distress upon her, all of which caused her, in turn, to damage other vehicles in APCA's garage. These claims are, in short, logically related. We conclude, therefore, that Neil's failure to bring her claims for assault and battery, false imprisonment, and intentional infliction of emotional distress as counterclaims to APCA's damage action bars her from bringing these claims in a separate action.

B. The effect upon Neil's actions for malicious prosecution.
Neil's complaint contained two separate counts for malicious prosecution. One count, dismissed by the trial court and therefore involved in this appeal, alleged that APCA's replevin action was maliciously prosecuted. The other, not dismissed by the trial court, alleged that APCA's suit for damages (the cost of the paint job and the cost of repairing the garaged vehicles) was maliciously prosecuted. As will be seen, and as the trial court recognized, they must be considered separately.
The threshold requirement for a compulsory counterclaim is that it be a viable claim against the opposing party when the opposing party asserts his claim. Florida Rule of Civil Procedure 1.170(a) begins:
"Compulsory Counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party... ." (emphasis supplied).
A malicious prosecution action requires as one of its essential elements a bona fide termination of the "prosecution." Gatto v. Publix Supermarket, Inc., 387 So.2d 377 (Fla. 3d DCA 1980). Thus, a malicious prosecution action cannot be brought as a counterclaim, and a fortiori cannot be a compulsory counterclaim when the "prosecution" said to be malicious is the pending action of the opposing party. Blue v. Weinstein, 381 So.2d 308 (Fla. 3d DCA 1980).
*1166 It is clear, then, as the trial court ruled, that Neil's claim that APCA maliciously prosecuted her when it sued to recover the cost of painting the car and for damages to the garaged vehicles could not have been brought as a counterclaim in that very action. But in respect to Neil's claim that APCA maliciously prosecuted her when it first sought replevin, the usual barrier that the prosecution had not been terminated did not exist, since APCA's replevin action was resolved in Neil's favor by the time APCA commenced its damage action.
However, notwithstanding that a cause of action for malicious prosecution has ripened by bona fide termination, and thus could be brought in response to a second prosecution, we are of the view that such a cause of action does not arise out of the transaction or occurrence that is the subject matter of the plaintiff's claim. Our holding in Blue v. Weinstein, supra, that an abuse of process counterclaim, which arises from the process, is permissive, not compulsory, applies with equal force to a ripe malicious prosecution counterclaim which arises from the prosecution. See also Aviation Materials, Inc. v. Pinney, 65 F.R.D. 357 (N.D.Okla. 1975); Bose Corporation v. Consumers Union of the United States, Inc., 384 F. Supp. 600 (D.Mass. 1974). Neil's dismissed malicious prosecution owes its existence not to the events of that fateful day in May 1975 when Neil went to take her car home, but to the institution and dismissal of APCA's replevin suit which damaged Neil.

Conclusion
The trial court properly dismissed Counts 1, 2 and 3 of Neil's complaint, which alleged assault and battery, false imprisonment, and intentional infliction of emotional distress, all of which, in our view, arose out of the same transaction or occurrence as APCA's claim for damages and therefore had to be brought as a counterclaim in that action. Neil's claim for malicious prosecution arising from APCA's replevin suit against her stands on a different footing. While this malicious prosecution claim could have been brought as a counterclaim to APCA's later suit for damages, it was not required to be brought.
Affirmed in part; reversed in part and remanded.
NOTES
[1] The trial court correctly denied a motion to dismiss another count for malicious prosecution. See discussion, infra.
[2] APCA contends that since less than all counts were dismissed, no appeal lies from the dismissal of these four counts. As will be seen, infra, the only interrelated counts, those alleging assault and battery, false imprisonment, and intentional infliction of emotional distress, were all dismissed. They do not arise from the same transaction as either the dismissed malicious prosecution count or the pending malicious prosecution count, which, in turn, are unrelated to each other. Accordingly, we have jurisdiction of this appeal. Mendez v. West Flagler Family Association, Inc., 303 So.2d 1 (Fla. 1974).
[3] Section 78.01, Florida Statutes (1975), authorizes a writ of replevin to recover personal property wrongfully detained by another and, in addition, "damages sustained by reason of the wrongful taking or detention." To the extent such damages are sought, the action is in personam as well as in rem. However, merely naming the individual in possession as a defendant does not make the action in personam. See Delacruz v. Peninsula State Bank, 221 So.2d 772 (Fla. 2d DCA 1969). While under former Section 46.08, Florida Statutes, no action could be joined with, or counterclaim filed against, a replevin action, Huckleberry v. Davis Double Seal Jalousies, Inc., 117 So.2d 519 (Fla. 3d DCA 1960), the repeal of that statute paved the way for counterclaims to replevin. Robinson v. Cinema International, Ltd., 356 So.2d 843 (Fla. 4th DCA 1978) (allowing permissive counterclaim in replevin action, but erroneously employing compulsory counterclaim language).
[4] Rule 13(a) is the federal counterpart of Florida Rule of Civil Procedure 1.170(a). Decisions under the Federal Rules are persuasive guidelines to the interpretation of state rules which are closely patterned after the Federal Rules. Gross v. Franklin, 387 So.2d 1046 (Fla. 3d DCA 1980).
[5] The rule requiring that a compulsory counterclaim be brought cannot be avoided on the ground that the counterclaim exceeds the monetary jurisdiction of the court in which the claim was brought. Florida Rule of Civil Procedure 1.170(j) provides for transfer to the proper court in such an event.
[6] The genesis of the logical relationship test is found in Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), where the court said, "[t]ransaction is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." The test appears to have received acceptance in Taussig v. Insurance Company of North America, 301 So.2d 21 (Fla. 2d DCA 1974), and Stone v. Pembroke Lakes Trailer Park, Inc., 268 So.2d 400 (Fla. 4th DCA 1972). But in both Taussig and Stone, the relationship between the claims of the opposing parties was so "logical" that the failure of one laid the foundation for the other. As will be seen, the logical relationship test embraces much more than mere corollaries.
[7] It is clear enough that a counterclaim is compulsory when it comes within three other tests which have found some favor in the courts: (1) Are the issues of fact and law raised by the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule? (3) Will substantially the same evidence support or refute the plaintiff's claim as well as the defendant's counterclaim? See Hilton Casinos, Inc. v. First National Bank of South Miami, 380 So.2d 1061 (Fla. 3d DCA 1980). To the extent that these tests are variations on collateral estoppel and res judicata themes in the instance where the opposing party's claim is proved, it is doubtful whether they are properly tests for judging when a counterclaim is compulsory. In such a case, where an issue between the parties has been resolved favorably to the original claimant, the defendant would likely be collaterally estopped from relitigating that same issue, and the additional bar resulting from the failure to file a compulsory counterclaim is unnecessary. See 3 Moore's Federal Practice ¶ 13.12[1], at 13-269, n. 3 (2d ed. 1980). But quite apart from the issue of the necessity of these tests, there is the issue of utility. Obviously, if the relationship between the claim and counterclaim satisfies any of these tests, it necessarily satisfies the logical relationship test. See, e.g., Taussig v. Insurance Company of North America, supra; Stone v. Pembroke Lakes Trailer Park, Inc., supra; Moore v. New York Cotton Exchange, supra, which, accordingly, are not very useful to the present inquiry. It is when, as here, the issues of fact and law are not largely the same, when collateral estoppel or res judicata do not apply, and when the evidence to support the plaintiff's claim and the defendant's counterclaim is not the same that only the logical relationship test can be used.
[8] Eaton had titled the radio station in the name of Padilla, a Mexican female friend. Padilla had absconded to Mexico with Eaton's ward, a young girl.
[9] For further examples of claims which do not arise out of the transaction or occurrence that is the subject matter of the opposing party's claim, see Metropolitan Casualty Insurance Company v. Walker, 151 Fla. 314, 9 So.2d 361 (1942), and Hilton Casinos, Inc. v. First National Bank of South Miami, supra. In Hilton Casinos, the claim was asserted by a third-party defendant against the plaintiff under Florida Rule of Civil Procedure 1.180, which contains language identical to Florida Rule of Civil Procedure 1.170(a).