489 So.2d 160 (1986)
WILLIAMS MANAGEMENT ENTERPRISES, INC., Appellant,
v.
Robert H. BUONAURO, Appellee.
No. 84-1638.
District Court of Appeal of Florida, Fifth District.
May 29, 1986.
*161 Marcia K. Lippincott, P.A., Orlando, for appellant.
Ronald L. Harrop of Gurney & Handley, P.A., Orlando, for appellee.
COWART, Judge.
This case involves the question of whether the action of replevin is available to recover funds held by a defendant in a bank checking account.
The complaint alleges that appellant, a corporation, had a corporate bank checking account subject to the signature of its officer, R. Bruce Williams; that R. Bruce Williams drew a check on appellant's bank account and delivered the check to appellee, an attorney, for deposit into attorney's bank trust account for the account of R. Bruce Williams. The corporation filed a law action in replevin against the attorney alleging that the corporate check drawn on corporate funds was unauthorized and describing the property for which the corporation demanded possession as being "the sum of ... $125,000" and as "monies." The trial court dismissed the replevin complaint and the corporation appeals. The trial court was correct. Replevin is not a proper remedy. The dismissal is affirmed.
Conversion is the name of an act of dominion wrongfully asserted over, and inconsistent with, another's possessory rights in personal property. Depending mainly on whether the object of the action is to recover the immediate possession of the personalty and incidental damages for its detention, or to recover money damages for the value of the converted personalty, four principle law remedies or causes of actions are available: (1) replevin, (2) detinue, (3) trover and conversion, and (4) debt. The first three are ex delicto actions; the fourth is ex contractu. These four actions are described and compared below.[1]
*162 Because replevin and detinue involve recovery of the personalty itself, in specie, the personal property which is the proper subject matter of those actions has, by necessity, always been restricted to the recovery of tangible personalty capable of specific identification and manual seizure. On the other hand, because the cause of action of trover and conversion is only for the recovery of money damages it has never been necessary to the remedy or cause of action of trover and conversion that the wrongfully taken or detained (converted) personalty be capable of specific identification and seizure. In fact, the law actions for money damages on the theories of trover and conversion and for debt are often used for the very reason that the property converted has been lost, hidden, destroyed, or is otherwise not capable of being discovered and recovered under a writ of replevin.
Blackstone, in his Commentaries published in 1765, stated:
in this action of detinue it is necessary to ascertain the thing detained, in such manner as that it may be specifically known and recovered. Therefore it cannot be brought for money, corn, or the like, for that cannot be known from other money or corn, unless it be in a bag or a sack, for then it may be distinguishably marked.
3 W. Blackstone, Commentaries *152. Blackstone then noted that in the action of trover and conversion, "the less degree of certainty requisite in describing the goods" gave that action so considerable an advantage over the action of detinue that actions of trover, originally only to recover damages for property found but then wrongfully detained, were at length permitted to be brought for every wrongful detention. Id. at *153. In Florida, the action of replevin was formerly commenced by the filing of an affidavit; Crandall, after noting that there had been considerable litigation on the certainty required in describing the property in the affidavit, stated:
The general rule is that the description should be such as will enable the officer who makes the seizure to identify it. The plaintiff can not use too much care in preparing this portion of his affidavit.
*163 C. Crandall, Florida Common Law Practice 522 (1928). As to the declaration in the action of detinue, Crandall stated:
The property must be described with sufficient certainty to enable one to identify it, for the judgment and execution are for the recovery of specific property.
Id. at 555.
The general law treatises have always noted this inherent limitation on the type of property that is subject to recovery in an action of replevin:
The general rule is undisputed that replevin lies only for specific property, capable of identification or separation so as to be seized in kind... .
34 Cyclopedia of Law and Procedure 1359 (1910).
Ordinarily, specific personal property, unlawfully taken or detained from the owner thereof, is the subject of an action of replevin ... provided the property sought to be replevied is capable of identification and delivery; but where property cannot be identified or separated so as to be seized in kind, replevin usually will not lie ... Replevin will not lie for incorporeal personal property, such as shares in a corporation, as distinguished from certificates of stock ...
77 C.J.S. Replevin § 9 (1952).
The difficulty which arises in an endeavor to replevy money is to describe it with that degree of accuracy which is required in replevin. Thus, a complaint which contains no allegation showing that the defendant had in his possession any specific money capable of identification, but which shows only that he had collected for the plaintiff a draft deposited by the plaintiff in the usual course of business, is not sufficient.
66 Am.Jur.2d Replevin § 13 (1973).
This is the reason section 78.055(1), Florida Statutes, requires every complaint in replevin to contain "a description of the claimed property that is sufficient to make possible its identification ..." (emphasis added) Accordingly, the action of replevin is inappropriate and unavailable when the personalty converted is, as a practical matter, incapable of being specifically described in a writ of replevin and located, identified, and seized by the sheriff executing the writ.[2]
Personalty can be incapable of identification and seizure either (1) because it is fungible property commingled with property of like kind, or (2) because it is intangible personal property.[3] In both instances specific property is not capable of manucaption. "Funds" deposited in a bank account with other funds suffer from both such identification infirmities. However, intangible personal property must be clearly distinguished from tangible evidence[4] of intangible property, which tangible evidence can usually be identified and, when it can be, such tangible evidence may be the subject of an action of replevin when the issue is who is entitled to the immediate possession of the physical object, but not when the issue is the ownership of the intangible right that is represented by the *164 tangible evidence. Accordingly, replevin will not lie to recover a deed where the title to land is involved in the action.[5] Analogously, replevin does not lie to recover a check or passbook where the title or ownership of the funds on deposit in the bank account is involved. This is because replevin is strictly a possessory action where the sole legal issue is the right of immediate possession, not ownership or title.[6]
Money, that is, currency (coined metal and paper bank notes), is personal property which is a proper subject of the tort of conversion for which the remedy of conversion (trover) is always appropriate. Nevertheless, as Blackstone noted, normally money is fungible property, like grain, cotton, etc., which, if commingled with other similar money, is incapable of specific identification and not the proper subject of replevin.[7] When specific bills and coins are identifiable because of serial numbers or special markings, or because they are located uncommingled at a specific exclusive place or contained within a identifiable container, the bills and coins, so identifiable, can be replevied.
However, the word "money," or its plural "monies," also has another entirely different meaning. In addition to referring to the generally accepted medium of exchange which exists as tangible (but usually fungible) coined metal and paper currency, the word is commonly used broadly as referring to wealth or value, as reckoned in terms of money, such as an account, credit, or an indebtedness, and, when so, the reference is to an intangible concept often called "funds," "sum," or "monies." Thus, it is common to say, "I have money in the bank" or "he owes me money" or "pay me my money." Such terms do not refer to specific bills or coins but to the property ownership concept of debt or the accounting concept of accounts receivable. It is necessarily in this latter sense that the complaint in this case refers to "The sum of $125,000 taken by R. Bruce Williams without authority from the account of Williams Management Enterprises, Inc. Barnett Bank of Winter Park, Account No. XXXXXXXXXX" and then refers to "these monies." Accordingly, the reference is to the intangible concept of wealth  of money due and owing or debt  and it is primarily[8] for this reason that the remedy of replevin is not appropriate in this case.
In the present day cashless "paper" society it is normal for lay persons to think of *165 a check as being a medium of exchange, like currency, or, at least, as having intrinsic value; however, in legal contemplation that is not correct. A check is a bill of exchange drawn on a bank and payable on demand. A bill of exchange or draft is but a written order or direction, signed by a maker or drawer (a creditor), directing a drawee (a debtor, usually a bank) to pay over to a third person (the payee, or other holder of the written order) a certain portion or sum of the money owed to the maker by the drawee. A check or other bill of exchange can be negotiable and, as such, it may have certain peculiar legal characteristics not involved at this stage in this case (e.g., the defendant has not pleaded that he was a holder in due course). Appellant corporation's bank merely received funds (cash or checks or credits) from the corporation with an agreement to repay them (in cash or checks or credits) to the corporation or to third persons as directed (ordered) by the corporation by its checks. The relationship between the corporation and its bank is that of debtor and creditor. The corporation could not replevy its own funds or monies on deposit from its own bank because its corporate deposits have changed their form from tangible currency and checks into intangible accounting credits and cannot be specifically identified as tangible property. When the corporation's officer issued a check on the corporate funds and delivered that check to the defendant attorney and the attorney deposited that check in his trust bank checking account, the attorney's bank, through banking channels, duly presented the corporate check or order to the corporation's bank which then transferred (credited) "funds" to the attorney's bank, where they now exist as an accounting credit or "money" owed by the attorney's bank to the attorney. The corporation's bank then debited the corporation's account in the amount of the check and has, doubtless, returned the original executed check to the corporation who should now have it. As a result of this transaction neither the attorney nor the attorney's bank has tangible property capable of specific identification and physical seizure by a sheriff executing a writ of replevin or writ of possession. The attorney has only a credit balance in his favor on the books and records of his bank. The legal result of all of this is that the attorney's bank "owes" (is indebted to) the attorney for the sum of "money" the attorney has on deposit in the attorney's bank and the attorney "owes" (is indebted to) all persons (clients) whose "money" the attorney has received and holds in trust in his bank trust account. Replevin is not a proper remedy to recover "funds" held in an account.[9]
A check is a chose in action; it is only tangible evidence of a cause of action. If, instead of depositing the check in his bank trust account, the attorney (or anyone else) was physically holding the check, and was not entitled to it as a holder in due course or otherwise, and the plaintiff corporation was entitled to the immediate possession of it, doubtless the corporation could replevy the check because it is tangible and is subject to specific identification by number, date, amount, payee, etc. Likewise, if the corporate officer had delivered currency (bills or coins) to the attorney which currency was placed in an identifiable container and placed in a safe in the attorney's office, the corporation, or other person entitled to the immediate possession of that currency, could maintain an action for replevin against the attorney or other person in possession of the identifiable currency. However, in this case, after the defendant deposited the corporate check in his bank, the action of replevin against the defendant was inappropriate to the true owner (possessor) of the "funds" transferred by the check for several reasons: (1) because the defendant then no longer possessed the *166 check, (2) the "funds" were in possession of the defendant's bank, and (3) neither what the defendant then possessed (a bank credit), nor what the defendant's bank possessed, was tangible and identifiable personal property subject to physical seizure by an officer executing a writ describing it.
In Belford Trucking Co. v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970), Zagar, a truck owner-driver, had an agreement with the defendant Belford Trucking Company under which Zagar was to haul freight and receive a percentage of freight charges as compensation. Over a period of months Zagar hauled freight and the trucking company received all of the money representing freight charges, and, on its books, entered a credit to Zagar's account and debited that account with certain expenditures and draws made by Zagar. When a dispute arose, Zagar sued the trucking company for the balance of the agreed percentage of freight charges that he figured was due him after deduction for the expenses and draws paid by the trucking company. However, Zagar sued in conversion alleging that the trucking company had wrongfully deprived or converted to its own use "legal currency" rightfully belonging to Zagar. The trucking company counterclaimed for a balance it claimed to have paid Zagar over and above the agreed percentage due him. The jury found for Zagar and the trucking company appealed. The appellate court stated that the primary thrust of the appeal was whether the evidence supported an action for conversion and reversed the judgment in favor of Zagar. However, Belford seems to hold that conversion, an ex delicto tort action, is inappropriate where the plaintiff merely claims that, after credits (receipts) and debits (disbursements) are made, a balance payable in money is due him under an express agreement. The action should have been one ex contractu for sums due under an express contract or for debt due. The court in Belford did not consider the conceptual difference between ex delicto actions and ex contractu actions and in fact held that it knew of no theory under which Zagar could recover on the facts alleged. Further, the court failed to appreciate the ambiguity in the word money (as being either currency, which is tangible but usually fungible, or as being an intangible concept of wealth existing as credit between a debtor and a creditor) and its statement that "the money" Zagar sought to recover lacked "the specificity required to make it a proper subject of conversion" was unnecessary to its conclusion and is erroneous to the extent that it implies that the action of conversion, being an action only to recover money damages for a wrongful taking or detention, has ever required the specificity in description of the personalty involved that is required by the actions of replevin and detinue. In any event, Belford did not involve the action of replevin and the holding in that case is not relevant to the issue in this case.
In an annotation in point entitled "Replevin For Bank Account" 44 A.L.R. 1522 (1926), no case is cited authorizing replevin of a defendant's bank account. The lead case to that annotation and the one that comes the closest to approving replevin of a bank account is Eaton v. Blood, 201 Iowa 834, 208 N.W. 508, 44 A.L.R. 1516 (1925). In Eaton the probate court held that certain bonds and a savings account were the property of the decedent's sister and that the decedent's husband, as administrator of his wife's estate, was not entitled to that property. The sister then sued the administrator in replevin. Because the defendant admitted in his answer that he was in possession of the savings bonds, passbook, and savings account, the appellate court did not consider the problem closely, stating only that: "Replevin for a bank account is somewhat novel, though such cases have not been altogether unknown to the trial courts." (emphasis supplied) 208 N.W. at 511. This masterpiece of understatement clearly recognizes that the concept is totally unknown to appellate court opinions. Significantly, Eaton did not involve a bank checking account but rather a "passbook" savings account. In such an account the passbook is physically identifiable evidence of the intangible debt owing by the savings *167 bank to the depositor and must be presented to make withdrawals. The court in Eaton considered the passbook as representing or embodying the intangible bank account. There is no passbook or passbook savings account in this case.
The fact that the defendant is an attorney and that the funds sought to be replevied are in an attorney's bank trust account is entirely immaterial to the legal issue of whether the action of replevin is appropriate to funds held by anyone in a bank checking account. A bank checking account is a bank checking account, and the debtor-creditor relationship between the bank and its general checking account depositor is the same in all such cases without regard to the character or capacity of the depositor. The complaint in this case does not seek equitable relief and does not allege that the defendant received or holds the funds in question as attorney for the plaintiff corporation; nor does the complaint allege, directly or indirectly by implication, that the defendant, as an attorney, has any fiduciary relationship as trustee or otherwise to the plaintiff corporation. As to funds held in a trust account, an attorney or anyone else may have a fiduciary relationship to the person for whom the funds are held, or to the true equitable owner, but the trust nature of the funds in the account does not establish a trust relationship between the holder of the funds and everyone else in the world. In fact, the trust obligation of an attorney with respect to trust funds received from, and held for, a client requires the attorney to defend his possession of such funds from all persons claiming adverse to his client.
The recognition and enforcement of trust obligations is the exclusive province of equity. If the plaintiff in an equity case were seeking to establish that the defendant owed some fiduciary obligation as an attorney or as equitable accounting, and, incidentally, was endeavoring to trace trust funds through changing forms, then the defendant's status as an attorney and the fact that the funds were in a trust account could be very material but, in this replevin action at law, those factors are entirely immaterial as is the entire Florida Bar Code of Professional Responsibility and all of the Florida Bar integration rules relating to trust funds. If a bank should refuse to pay an attorney, or anyone else, funds deposited in a "trust account," to recover such funds, except in the rarest of cases, the trustee like any other depositor-creditor would be required to sue the bank as debtor and recover a money judgment representing the "trust" funds. There is no separate cause of action in law just for trustees or beneficial owners. There is in equity. While attorneys and other fiduciaries usually segregate trust funds in bank accounts separate and different from bank accounts in which they hold personal funds, the funds of each such client are not separated into their own identifiable account; the funds of multiple clients are commingled. An attorney's bank does not know the amount in the attorney's trust account that belongs, in equity, to each of the attorney's clients. Even if the Williams funds were in a bank trust account all by themselves, such funds are still intangible credits not subject to recognition and physical seizure. The "monies" and "funds" cannot be brought within the tactile grasp of an officer executing a writ of replevin. Likewise, when the trustee has converted trust funds, the fact that a client or other trust beneficiary can recover a general money judgment against an attorney, or any other fiduciary, on the theory of conversion is totally immaterial to the question of whether personalty is sufficiently capable of being identified and physically seized by an officer executing a writ of replevin. In a proper case, in a law action, a plaintiff can, in an ejectment action, obtain a writ of possession to effectively recover the possession of real property and, in a replevin action, obtain a writ of replevin to recover the possession of tangible identifiable personal property; otherwise, only a money judgment is recoverable in a law action. To enforce money judgments, ancillary legal remedies, such as garnishment and attachment, are available to reach debts owed to, and funds held for, the judgment *168 debtor, but only in an equity suit can a court adjudicate trust relationships, recognize the equitable ownership of funds or other property held in trust, trace property through changing forms, and enforce the ownership rights of equitable or beneficial owners.
The complaint in this case affirmatively shows that the plaintiff's specifically identifiable check was not in the possession of the defendant when this replevin action was filed. The complaint also affirmatively shows that the "fund" and "monies" sought to be recovered by writ of replevin in this case exist not in the form of tangible paper bills and coin currency but only in legal and accounting contemplation as an intangible credit or debt in favor of the defendant attorney on the books of the defendant attorney's bank and as an accounting credit in favor of R. Bruce Williams on the trust account records in the office of the defendant attorney. Such accounting credits are mere records of legal debts owed by the defendant attorney's bank to the defendant attorney and owed by the defendant attorney to R. Bruce Williams. The proper legal action and remedy on the facts alleged in the complaint in this case is the action of debt or the concurrent action of general assumpsit in the form of the "common count" known as "money had and received." The thought behind that cause of action is that, in the absence of evidence of some express specific agreement, the law will assume that one who receives and holds money that belongs to another has impliedly assumed the obligation of returning it and is, accordingly, in law indebted to the owner for it. This legal theory is based on an undertaking or agreement to do a right thing which agreement is implied by the law from the facts. Such an action in debt and general assumpsit are ex contractu to enforce an implied agreement or right as distinguished from an ex delicto action to correct wrongful conduct.
If it is alleged and proved that the corporate officer's delivery of the corporate check to the defendant constituted a breach of the corporate officer's fiduciary obligations to the corporation and that in receiving or holding that check or its proceeds the defendant knew, or from the facts and circumstances should have known, that he was participating in a breach of trust, then the defendant would be liable to the corporation in a law action for all damages resulting from such breach of trust.[10] Those facts are not alleged in this case and, if so, would only establish an alternate cause of action for money damages but not for replevin.
The action of replevin is not available to recover a sum of "money" claimed by the plaintiff and "possessed" by the plaintiff only in the form of "funds" on deposit in the defendant's bank checking account.
AFFIRMED.
COBB, C.J., concurs.
ORFINGER, J., dissents with opinion.
ORFINGER, Judge, dissenting.
I respectfully dissent. The complaint[1] describes the personal property sought to be replevied as:
The sum of one hundred and twenty five thousand dollars ($125,000.00) taken by R. Bruce Williams without authorization from the account of Williams Management Enterprises, Inc., Barnett Bank of Winter Park, Account No. XXXXXXXXXX, on or about April 6, 1983 and placed in the attorney trust account of Defendant ROBERT J. BUONAURO, 14 East Washington Street, Orlando, Florida 32801, in the name of R. Bruce Williams.
The complaint further alleges, in substance, that the property is in the attorney trust account of Buonauro and under his control and direction; that Buonauro *169 wrongfully detains it because Williams took the money out of plaintiff's bank account wrongfully and without authorization: that Williams gave the money to Buonauro who placed it in his attorney trust account in the name of R. Bruce Williams. In my opinion, these allegations sufficiently describe and identify the money in question so as to make it subject to replevin while held by the attorney in trust.[2]
The majority opinion correctly states that money can be the proper subject of replevin when it can be specifically identified, but it is incorrect when it says that the relationship between the attorney trustee and the true owner of the property is that of debtor and creditor. The relationship between the beneficiary of a trust and the trustee is not one of debtor and creditor. Instead, the trustee "receives the property of the cestui que trust in a fiduciary capacity only, and is bound to hold it sacred and to keep it separate from the general funds ..." of the trustee. Tomasello v. Murphy, 100 Fla. 132, 129 So. 328, 330 (1930).
There can be no doubt that an attorney holding funds in trust holds them as would any other trustee. Florida Bar Integration Rule, article XI, Rule 11.02(4), says:
Money or other property entrusted to an attorney for a specific purpose, including advances for costs and expenses, is held in trust and must be applied only to that purpose. Money and other property of clients coming into the hands of an attorney are not subject to counterclaim or set-off for attorney's fees, and refusal to account for and deliver over such property and money upon demand shall be deemed a conversion. .. .
Attorneys in Florida are required to keep trust funds in a separate, specifically identifiable "trust account," and must maintain records which specifically identify the client or matter for which the trust funds are received, the date, source and reason for which the trust funds were received and the amount of such receipt. Fla.Bar Integr.Rule, art. XI, Rule 11.02(4)(b) and (c). Thus, trust funds in the hands of an attorney are pigeon-holed and classified and identifiable in the attorney's trust account. Unless it is otherwise demonstrated, we have a right to assume that the defendant/attorney is in compliance with the Integration Rule.
Therefore this case is not one for the collection of a debt, as in Senior Class of Pekin High School v. Tharp, 261 Iowa 539, 154 N.W.2d 874 (1967); Johnson v. Clutter Music House, 55 Fla. 385, 46 So. 1 (1908) or Malsby v. Camble, 61 Fla. 310, 54 So. 766 (1911), or in the other cases where there was a debtor-creditor relationship and the fund was not identifiable. Rather, this case is more like Eaton v. Blood, 201 Iowa 834, 208 N.W. 508 (1926), where the Iowa Supreme Court recognized the right of the true owner to replevy a savings account and passbook from a bank which held the same in trust. So too here, Buonouro holds this money in trust, in a designated trust account, specifically designated and identified as funds received from Williams. This identification and segregation of the funds makes them subject to replevin by plaintiff who claims to be the true owner.
There is another basis on which replevin can be supported here. Article XI, Rule 11.02(4) provides that the failure to account for and deliver trust funds upon demand *170 shall be considered a conversion. As with replevin, money is the proper subject of conversion when it can be specifically identified. Belford Trucking Company v. Zagar, 243 So.2d 646 (Fla. 4th DCA 1970). In Allen v. Gordon, 429 So.2d 369 (Fla. 1st DCA 1983) the First District held that the misappropriation of the money in two savings accounts by a signatory on the accounts would properly subject the wrongdoer to an action for conversion because
The two accounts involved here were separate ascertainable amounts and accounts. The money was, therefore, specific and identifiable. The conversion took place, not while in the accounts, but upon appellant taking the money from the accounts. By withdrawing the money, appellant exercised wrongful dominion and control to the detriment of appellee. Therefore a conversion action was proper. [Emphasis added].
Id. at 371. In Aero International Corporation v. Florida National Bank of Miami, 437 So.2d 156 (Fla. 3d DCA 1983), pet. for review denied, 449 So.2d 264 (Fla. 1984) the court affirmed a judgment for conversion of money which had been placed with the bank under an escrow agreement, holding that the funds were clearly identifiable, although it is clear from the opinion that the money was comingled with other assets of the bank.
Because the funds held in Buonauro's trust account are subject to an action for conversion if misappropriated, it must be that they are specifically identifiable. They are therefore subject to replevin by one claiming to be the true owner.
I would reverse the order dismissing the action and remand the cause for further proceedings.
NOTES
[1] Replevin was originally recognized by Glanvil, the earliest English law writer, as being a remedy to enable a tenant whose goods were wrongfully distrained to litigate the right of the landlord to make the distress. Later, it was extended to any wrongful taking of personally and, now in Florida by statute, it lies for any wrongful taking or wrongful detention of any specific personal property. § 78.01, Fla. Stat. It is a possessory action (§ 78.02(4), Fla. Stat.) and the object is to enable the plaintiff to secure the immediate possession of chattels wrongfully detained and, incidentally, damages for the detention. See Foresight Enterprises v. Leisure Time Prop., 466 So.2d 283 (Fla. 5th DCA 1985). Replevin can be an in rem action in that the action can proceed to judgment for possession of the property based on the sheriff's seizure of the property itself, under a writ of replevin, and process by publication without personal service of process on the defendant. See §§ 49.011(7), 78.065(2)(c), Fla. Stat.; Neil v. South Florida Auto Painters, Inc., 397 So.2d 1160, 1163 n. 3 (Fla. 3d DCA 1981); Delacruz v. Peninsula State Bank, 221 So.2d 772 (Fla. 2d DCA 1969).

Originally detinue was purely an action to recover goods in specie, if obtainable, and if not, their value at the time of the verdict, in cases where there was no wrongful taking. However, even before the Declaration of Independence by the American colonies on July 4, 1776 (the date as of which Florida has adopted the common law of England, see § 2.01, Fla. Stat.) English law had extended the action of detinue to cover all cases of wrongful detention, which is the gist of the case. Like replevin, detinue was for the recovery of specific property, but unlike replevin, the action proceeded without a prejudgment seizure of the property and the plaintiff was not required to post bond. As Henry P. Trawick, Jr., points out (Trawick, Fla.Prac. and Pro., Replevin, § 34-1 (1973)), Florida has provided for replevin without bond and without writ of replevin since 1953. Also unlike replevin, in detinue, judgment for the plaintiff was for the goods or their value at the time of the verdict and the defendant had the choice of delivering the goods, or retaining them and paying their value as fixed by the jury. In detinue, the determination of value at the time of the verdict differed from the action of trover (conversion) where the value was determined as of the date of the conversion. Notwithstanding the distinction as to the date of determining value and the fact that the action of detinue has never been formally abolished, it is usually said that the action of detinue is obsolete because in Florida, now by statute, replevin relates to property both wrongfully taken and wrongfully detained.
The action of trover and conversion developed as a special kind of trespass on the case. Originally used against a finder who wrongfully refused on demand to surrender the goods to the owner from which finding and converting, it was called trover and conversion. This action became the established remedy in all cases of conversion to try the right to possession of chattels where the plaintiff prefers to recover money damages rather than the chattels themselves. The gist of the action is the conversion of the goods. The action is now commonly called simply conversion.
The action of debt is an alternative cause of action for a wrongful taking or wrongful detention of personally, because the rightful possessor has the option to waive the tortious taking or detention and sue ex contractu in assumpsit on the promise implied by the law from the facts that the wrongdoer had agreed to pay for the property wrongfully taken or, if the owner has regained possession, the value of its use while wrongfully detained. See Annotation: Waiver of tort and recovery in assumpsit for conversion as dependent on or affected by sale of the goods by the converter, 97 A.L.R. 251 (1935).
[2] This must be contrasted with property that can be the subject of theft under Florida's omnibus theft statute (§ 812.014, Fla. Stat.) which has been held to include credit on a store charge account. See Brown v. State, 414 So.2d 15 (Fla. 5th DCA 1982). Judicial recovery of the converted property is not the object of the criminal trial of a theft case.
[3] Intangible personal property means a mere legal right in or to property as distinguished from the property itself and includes matters such as causes of action and ownership rights in, and lien interests against, property. Tangible personal property means an object capable of manual possession and whose chief value is intrinsic to the object itself.
[4] Tangible evidence of intangible property rights includes physical objects representing legal rights, such as evidence of ownership (deeds, bills of sale, stock certificates, passbooks, etc.), and lien interests (mortgages, judgments, deeds of trust, security agreements, etc.) and choses in action which constitute tangible evidence of the right to recover, by action at law, money damages, or possession of property, or money by foreclosure of lien interests (written contracts, bills of exchange, checks, notes, bonds, passbooks, and other evidence of debt, etc.).
[5] Holder v. Volusia County Bank & Trust Co., 95 Fla. 882, 116 So. 861, (1928).
[6] you travel through life, brother, whatever be your goal, keep your eye upon the donut, and not upon the hole."
The legal concept is not that inconceivable: If stock certificates are pledged but, by accident or otherwise, find their way back into the possession of the debtor-owner, they can be replevined by the secured creditor who is entitled to their immediate possession although the creditor-plaintiff neither has, nor claims, a title or ownership interest in the corporate shares represented by the stock certificates.
[7] The problem of replevying commingled goods is treated in 34 Cyclopedia of Law and Practice, 1359 (1910).
[8] A major problem in the practice of law today is that law schools teach only "notice pleading" and not common law pleading theory. Prior to 1950, in Florida, in order for the pleader to know and understand and plead the elements of a cause of action, he had to know the historical reasons that led to the development of that cause of action and the specific purpose it was intended to serve. Under the "notice" pleading concept, a defense motion to dismiss a complaint that fails to allege some essential element (fails to state a cause of action) is now usually met with the plaintiff's attorney's argument that the defendant's counsel "knows what I'm talking about," meaning that the defendant's counsel knows of the particular factual event that gave rise to the claim attempted to be plead and asserted in the complaint. In this case, the defendant attorney is being sued in replevin, a tort or ex delicto cause of action, yet the complaint does not allege that the original receipt of the plaintiff's check by the attorney was wrongful, or that the defendant is in actual possession of the plaintiff's check, or that, if he were, that his detention of the check (or its proceeds) is wrongful. Detention, following a lawful acquisition of possession, is itself lawful. The purpose of a demand is to change a rightful holding to a wrongful one. See C. Crandall, Florida Common Law Practice 514 (1928). That is the reason many causes of action require a demand as an element of a cause of action provided by law specifically to remedy a wrongful act.
[9] See Malsby v. Gamble, 61 Fla. 310, 54 So. 766 (1911); Johnson v. Clutter Music House, 55 Fla. 385, 46 So. 1 (1908); Sharon v. Nunan, 63 Cal. 234 (1883). Equitable Life Assur. Soc. v. Branch, 32 A.D.2d 959, 302 N.Y.2d 958 (N.Y. App. Div. 1969); Spear v. Arkansas National Bank of Hot Springs, 111 Ark. 29, 163 S.W. 508 (Ark. 1914); Senior Class v. Tharp, 261 Iowa 539, 154 N.W.2d 874 (Iowa 1967); 66 Am.Jur.2d Replevin § 13 (1973).
[10] See, for example, International Community Corporation v. Victor Young, 468 So.2d 629 (Fla. 5th DCA 1986).
[1] Because we are reviewing a final order dismissing plaintiff's complaint, we must assume the allegations thereof to be true for the purposes of this appeal.
[2] I call attention to the fact that the attorney is the only defendant in this case. No bank is involved as a party and no contention has been made by way of defense that the money is not in the attorney's trust account. Therefore, we need not become involved with the interesting question of whether replevin would lie against the bank which holds the attorney's trust account, where, as in most cases, the bank co-mingles the money in the account with other monies it holds. In this connection, however, see Glidden v. Gutelius, 96 Fla. 834, 119 So. 140, 145 (1928) where the Florida Supreme Court held that a cestui que trust does not part with his title where he deposits funds in trust with a bank, but in such case the bank receives the property in a fiduciary capacity only, "and is bound to hold it sacred and to keep it separate from the general funds of the institution," and that the beneficiary of the trust may trace and recover such funds notwithstanding the fact that the bank comingled the funds with other funds of the bank. The relationship between the attorney and the bank where he keeps his trust account is not involved in this appeal.