541 So.2d 618 (1988)
G. Thomas HUTCHENS, Appellant,
v.
MAXICENTERS, U.S.A., Appellee.
No. 87-1515.
District Court of Appeal of Florida, Fifth District.
April 21, 1988.
On Motion for Rehearing April 13, 1989.
Harry L. Lamb, Jr., of Perry & Lamb, P.A., Sanford, for appellant.
Charles G. DeMarco, P.A., Maitland, for appellee.
On Motion for Rehearing En Banc April 13, 1989.
SHARP, Chief Judge.
Hutchens appeals from a non-final order denying his motion to dissolve a prejudgment writ of replevin and recover possession of a Mercedes automobile from Maxicenters, U.S.A. We agree that Maxicenters established a prima facie right to possession of the Mercedes through constructive trust principles, and that venue was properly set in Orange County because the car was actually seized in Orange County and had been used in Orange County. § 78.03, Fla. Stat. (1987).
However, we agree with Hutchens that the trial court erred in requiring a replevin bond of only $1,000.00. The replevin statute provides:
The petitioner must post bond in the amount of twice the value of the goods subject to the writ or twice the balance *619 remaining due and owing, whichever is lesser as determined by the court as security for the payment of damages the defendant may sustain when the writ is obtained wrongfully. (Emphasis supplied).
The factual dispute in this case concerning the parties' respective rights to the Mercedes does not turn on any sums due under a contract between the parties. Compare Lease Financing Corporation v. National Commuter Airlines, Inc., 462 So.2d 564 (Fla. 3rd DCA 1985). Therefore, the only applicable statutory factor is the value of the car replevined. Evidence at the hearing indicated Hutchens paid $34,113.00 for the car. Therefore, the replevin bond should be at least double that amount.
Accordingly, we affirm, but remand with directions to the trial court to set the replevin bond at twice the value of the Mercedes.
AFFIRM; REMAND WITH DIRECTIONS TO INCREASE THE REPLEVIN BOND.
DAUKSCH and ORFINGER, JJ., concur.

ON MOTION FOR REHEARING EN BANC
PER CURIAM.
The Motion for Rehearing En Banc is denied.
SHARP, C.J., and DAUKSCH, ORFINGER, DANIEL and GOSHORN, JJ., concur.
COWART, J., dissents with opinion in which COBB, J., concurs.
COWART, Judge, dissenting.
This case involves a most important and fundamental practice and procedural issue as to the present status in Florida of the difference between law and equity and the difference between remedies and causes of action which should be openly addressed en banc by this court and the Florida Supreme Court. The essential issue is whether the 1954 merger of law procedure and equity procedure has resulted in an amalgamation of the theory and substance of those two bodies of law to the extent that a strictly law remedy, such as replevin, can now be used to directly enforce a strictly equitable cause of action, such as an action to establish a constructive trust.
An employee steals money from his employer and uses it to purchase an automobile with the legal title in the employee's name. Can the employer recover possession of the automobile from the employee by an action at law for replevin? The answer should be no.
Replevin is a possessory law action. The employer does not have legal title to the automobile[1] and is not otherwise entitled to the immediate possession of it. The employee, of course, has violated substantive legal rights of the employer and the employer does have the choice of several LEGAL REMEDIES to redress the violation of these rights. The employer can recover his stolen money by suing the employee at LAW on one or more theories of recovery (SUBSTANTIVE CAUSES OF ACTION) (for example, the tort of CONVERSION or implied ASSUMPSIT, specifically, the implied contractual theory known as the COMMON COUNT for MONEY HAD AND RECEIVED), the same as the employer can sue any stranger who converts his property, and obtain a money judgment, have execution issue and cause the sheriff to seize and sell the automobile *620 (or other leviable property of the employee) to satisfy the judgment. However, a court of LAW does not have the SUBJECT MATTER JURISDICTION necessary for it to recognize or adjudicate the breach of TRUST which is inherent in the employee's theft from his employer, or to provide the employer a direct customized EQUITABLE REMEDY. COURTS OF EQUITY have EXCLUSIVE JURISDICTION to do that. By proper allegations of fact and demand for relief[2] in a complaint in EQUITY the employer can INVOKE the EXCLUSIVE JURISDICTION of a COURT OF EQUITY to recognize the TRUST relationship between the employee and the employer, to find and adjudicate the employee's breach of that TRUST, and to exercise the special POWER and AUTHORITY of that particular branch, system, or body of law known as EQUITY or CHANCERY (1) to recognize an equitable cause of action because of the lack of power of a COURT of LAW to recognize the employer's SUBSTANTIVE EQUITABLE RIGHTS, which are not known to, or cognizable by, courts of law and (2) to provide any peculiar and special EQUITABLE REMEDIES that might be needed to enforce the employer's substantive equitable rights which are exemplified by corresponding EQUITABLE CAUSES OF ACTION. Specifically, the employer may plead an EQUITABLE CAUSE OF ACTION for a CONSTRUCTIVE TRUST, and seek an equitable adjudication that the employee's purchase of the automobile with the employer's money resulted, in equity and fairness, in the employee holding the LEGAL TITLE to the automobile in TRUST for the USE AND BENEFIT of the employer who thereby became the beneficial or equitable titleholder, OR, if he prefers, the employer can view and plead the facts to state an equitable cause of action for an EQUITABLE LIEN and obtain an adjudication that the employee's LEGAL TITLE to the automobile is encumbered by an EQUITABLE LIEN in favor of the employer to the extent that the employer's money was used as purchase money for the automobile. If a CONSTRUCTIVE TRUST is established, the equity court may EXECUTE or enforce the trust by ordering (in the form of a mandatory injunction) the employee to transfer the legal title to, and possession of, the automobile to the employer as beneficial owner, and enforce that injunction or order by the equity court's contempt power,[3] and, if necessary, as relief incident to the exercise of its exclusive equity jurisdiction, the equity court can enforce the employer's resulting legal title and right to possession by any LAW REMEDY available to a law court (such as a writ of replevin or a money judgment should the automobile become lost or destroyed). If an EQUITABLE LIEN is established, the equity court can enforce that lien in any manner that a law court can enforce a lien cognizable by law.
"Equity jurisdiction" as distinguished on the one hand from the general power to decide matters at all, and on the other hand, from the jurisdiction "at law" or "common-law jurisdiction," is the power to hear certain kinds and classes of civil causes according to the principles of the method and procedure adopted by the courts of chancery, and to decide them in accordance with the doctrines and rules of equity jurisprudence, which decision may involve either (1) the determination of the equitable rights, estates and interests of the parties to such causes, or (2) the granting of equitable remedies. In order that a cause may come within the scope of equity jurisdiction, one of two alternatives is essential: (1) either the primary right, estate or interest to be maintained, or the violation of which furnishes the cause of action, must be equitable rather than legal; or (2)(a) the remedy granted must be in its nature purely equitable, or (2)(b) if it be a remedy which may also be given by a court of law, it must be one which, under the facts and circumstances of the case, can only be made complete and adequate through the application of equitable doctrines, principles or remedies.[4] It is customary *621 to distinguish equitable jurisdiction as exclusive and concurrent, which distinction relates wholly to the nature and form of the remedies and properly belongs, therefore, only to that part of the jurisdiction which is based upon these remedies, i.e., (2)(a) or (2)(b) above. Equity jurisdiction embraces both cases for the maintenance or protection of primary rights, estates and interests purely equitable, and cases for the maintenance or protection of primary rights, estates and interests purely legal; and in the latter class of cases the remedies granted may be of a kind which are peculiar to equity courts, such as, reformation, cancellation, injunction, etc., or remedies of a kind which are administered by courts of law, as the recovery of money, or of the possession of specific real and personal property. The distinction between the exclusive and concurrent jurisdiction of equity represents the fact that the two kinds of remedies, equitable and legal, may, under proper circumstances, be obtained in the class of cases that involve the recovery of money or of the possession of specific things.[5]
The exclusive jurisdiction of equity extends to and embraces, (1) all civil cases in which the primary right violated or to be declared, maintained or enforced is purely equitable and not legal, and (2) all civil cases in which the adjudication sought involves a right, estate, title, or interest created by equity, and not by law.[6] This class of cases, of course, includes the equitable concepts of unjust enrichment and constructive trust and the interest in property created by a court of equity by application of the doctrine of constructive trusts. This class of cases falls under equitable jurisdiction alone, because of the nature of the primary or substantive right to be established, redressed, maintained, or enforced and not because of the nature of the remedies to be granted. Although in most such instances, the remedy is also equitable, it need not be necessarily so, such as, where, as in this case, the right to possession of a specific automobile is involved. Pomeroy[7] states the proposition controlling this case, as follows:
It is a proposition of universal application that courts of law never take cognizance of cases in which the primary right, estate, or interest to be maintained, or the violation of which is sought to be redressed, is purely equitable, unless such power has been expressly conferred by statute; and if the statutes have interfered and made the right or the violation of it cognizable by courts of law, such right thereby becomes to that extent legal.
This "proposition of universal application" is no "hyper-technical view."
The exclusive jurisdiction of equity includes all civil cases based upon or relating to equitable estates, interests, and rights in property as the subject-matter of the action. Chief among these are cases involving the recognition of trusts arising by operation of law from the conduct of parties. Constructive trusts are one such species and are raised by equity for the purpose of working out right and justice, where there was no intention of the party to create a trust relationship. All instances of constructive trusts may be referred to what equity denotes as fraud, either actual or constructive, including acts or omissions in violation of fiduciary obligations. If one party obtains the legal title to property by fraud or by violation of confidence or of fiduciary relations or in any other unconscientious manner, so that he cannot equitably *622 retain the property which really belongs to another, equity carries out its theory of a double ownership, equitable and legal, by impressing a constructive trust upon the property in favor of the one who is in good conscience entitled to it and who is considered in equity as the beneficial owner. Whenever a person in a fiduciary capacity breaches his trust and purchases property with trust funds and takes the title thereto in his own name, without any declaration of trust, a trust arises with respect to such property in favor of the cestui que trust or beneficiary. Equity regards such a purchase as made in trust for the person beneficially interested, independent of any imputation of fraud and without requiring any proof of an intention to violate the fiduciary obligation because it is assumed that the purchaser intended to act in pursuance of his fiduciary duty and not in violation of it.[8]
Williams Management Enterprises, Inc. v. Buonauro, 489 So.2d 160 (Fla. 5th DCA 1986) in essence, holds only that the common law remedy of replevin relates only to tangible personal property that a sheriff, executing a writ, can physically identify and seize and is inappropriate as applied to an intangible, such as, the debtor-creditor relationship existing between a lawyer and a client who has deposited money in the lawyer's trust account or as exists between a depositor and a bank as to monies deposited by the depositor with the bank. Therefore, the Buonauro case is inapplicable in this case where the property sought to be replevined is a specific Mercedes automobile.
However, where the right to possession of specific personal property is not a right in law, such as that of a legal titleholder or one claiming possession by or through the legal titleholder, but is a right cognizable only in equity and which must first be established by the bringing of a cause of action in equity the remedy of replevin in a court of law is unavailable, the claimant must sue in equity to have the equitable right established and that equitable right, enforced or established as a legal right, and may not, alternatively, file an action at law for replevin and establish the right to possession in a court of law based on equitable principles.
The line between these two branches or systems or bodies of law, while unclear and archaic to many who are unfamiliar and impatient with the historic reasons for it, was, and is, JURISDICTIONAL, although in a peculiar sense of that word. It clearly existed as part of the "common and statute laws of England" "down to the 4th day of July, 1776," has not been changed by statute in Florida and is of force in this state by virtue of section 2.01, Florida Statutes. In Florida since the adoption and ratification of the Constitution of 1868, circuit courts have been courts of general jurisdiction with original jurisdiction in all cases of law not cognizable by inferior law courts and with original jurisdiction in all cases of equity. In 1954, the Florida Supreme Court merged the 1950 Florida Common Law Rules and the 1950 Florida Equity Rules into one practice and procedure. However, neither by constitutional amendment, nor by legislative act, nor by court rule, has there been a merger or elimination of differences in substance between the two bodies of law known as common law and equity. The contrary view fails to recognize the vast and valuable differences between substantive law and procedure, between "right" and "remedy," and between "law" and "equity."
Unfortunately, equity is no longer taught in our law schools as a separate body of substantive law.[9] The separate treatises on the subject  Pomeroy, Story, and Kooman  are now substantially out of print and the field is clearly declining in recognition *623 and use.[10] Generally speaking, however, law courts have only the jurisdiction to render money judgments and common law writs of ejectment and replevin. All actions for more specific relief, such as, cases involving dissolutions of marriage, custody, guardianships, dissolutions of partnership, accounting, mortgage foreclosure, partition, subrogation, specific performance of contracts, the adjudication of equitable rights of beneficiaries under express trusts, the establishment of equitable liens, resulting trusts and constructive trusts, actions to reform, cancel or rescind instruments and agreements, actions for declaratory decrees, and actions for injunctions and to quiet title, are all causes of action which are peculiarly cognizable only in equity or chancery and are not within the jurisdiction of a court exercising only common law jurisdiction. This court does not have authority to abolish the substantive distinctions between common law and equity, nor has the effect of such a proposal been carefully considered. It is more complicated than merely writing, "There is no reason in this case why a court of law cannot apply equitable principles, and grant the legal relief requested" or "There appears to be no rational basis to dichotomize this remedy... ." Why "in this case"? Is the substantive difference between law and equity to be abolished in Florida case by case? Why are we starting in this case? In the next case are we to approve ejectment actions at law to enforce a plaintiff's claim of an equitable title to a parcel of land? Or use equitable remedies to enforce bare legal rights based on contract and tort principles? As the parties of replevin and ejectment actions are entitled to jury trials, will we not need Standard Jury Instructions explaining to juries the basis upon which judges of courts of equity have historically applied equity principles and exercised judicial discretion in equity cases? Are the parties in other cases founded upon equitable causes of action, including dissolutions of marriage, likewise entitled to jury trials? A court of law adjudicates cases based on legal, not equitable, principles and rights and can grant only legal remedies to enforce legal rights and to redress the violation of legal rights. A court exercising equitable jurisdiction adjudicates cases based on equitable and legal causes of action and principles and recognizes both legal and equitable rights but may, as needed to enforce equitable rights, use either remedies which are exclusively available in equity, or remedies that are available to law courts to enforce legal rights, i.e., money judgments. The common law concept of trusts is based on dividing title to property into two concepts, one legal and the other equitable, with a trust relationship being involved when the equitable title is separated from the legal title with the resulting necessity of dual conceptsof legal and equitable rights and remedies. How much are we to disregard or change? What is the intended or probable result? While unnecessarily complicated to those who are unfamiliar with the reason for it, the dual nature of law and equity is essentially based on the differing needs of a multi-faceted society (agricultural, industrial, business, financial, social, political, etc.) which somewhat reflects the multi-faceted (physical, spiritual, mental, moral, emotional, social, etc.) nature of man. Equity, as a separate system or body of law, was conceived and developed based *624 on the wisdom and experience of many centuries. It should not be altered except knowingly and deliberately by those with authority and a full knowledge of the particular reasons for the origin of each of its many maxims, principles and practices and a clear vision of the effect of any change. The panel opinion in this case, does not meet those requirements.
COBB, J., concurs.
NOTES
[1] The legal titleholder of property is presumptively entitled to possession of that property. Thus in Hughes Trust & Banking Co. v. Consolidated Title Co., 81 Fla. 568, 88 So. 266 (Fla. 1921), when officers of an abstract company signed a conditional contract of sale subject to ratification by stockholders and delivered the physical assets of the company to a prospective purchaser, the legal title to the assets remained in the abstract company, so when the stockholders refused to ratify the sale, the abstract company's proper remedy to recover its assets was an action at law for replevin and it was therefore error for the chancellor not to dismiss the abstract company's bill for equitable injunctive relief.
[2] Fla.R.Civ.P. 1.110(b).
[3] See Fla.R.Civ.P. 1.570(c).
[4] 1 Pomeroy, Equity Jurisprudence, Sec. I, Fundamental Principles and Divisions, § 130, p. 176 (5th Ed., Symons, 1941); see also Kooman, Florida Chancery Pleading and Practice, Sec. 4, Definition of Equity Jurisdiction, p. 7 (1939). Also see Malone v. Meres, 91 Fla. 709, 109 So. 677 (1926).
[5] 1 Pomeroy, Equity Jurisprudence, Sec. I, Divisions  Equity Jurisdiction as Exclusive, Concurrent and Auxiliary, § 136, p. 186 (5th Ed., Symons, 1941).
[6] See generally, 1 Pomeroy, Equity Jurisprudence, Sec. I, Exclusive Jurisdiction  Where Primary Right is Purely Equitable, § 137, p. 187 and Sec. II, The Exclusive Jurisdiction, § 146, p. 198 (5th Ed., Symons, 1941).
[7] 1 Pomeroy, Equity Jurisdiction, Part I, Ch. I, Sec. I, Exclusive Jurisdiction  Where Primary Right is Purely Equitable, § 137, p. 188, Note 17 (5th Ed., Symons, 1941).
[8] See 1 Pomeroy, Equity Jurisprudence, Sec. 11, The Exclusive Jurisdiction  Trusts Arising by Operation of Law, § 155, p. 209 and 4 Pomeroy, Equity Jurisprudence, Sec. V, Constructive Trusts § 1044, p. 93 (5th Ed., Symons, 1941) generally.
[9] At the University of Florida College of Law, Equity Jurisprudence was taught as a 5 credit course in 1947-48, a 3 credit course in 1948-49, and a 2 credit course from 1949 through 1960.
[10] In the preface to the first edition of his text book on Equity Jurisprudence in May, 1881, Professor John Norton Pomeroy was greatly concerned about the disastrous consequences of the then tendency to abolish the external distinctions between actions at law and actions in equity, the union of legal and equitable rights and remedies in one proceeding and the substitution of legal and equitable methods. Perhaps history will note that the rise and decline of Equity as a separate and distinct body of substantive law in Florida as parallelling the frequency with which reported Florida cases referred to Pomeroy's Equity Jurisprudence over the decades, which is illustrated as follows: 1890's  1; 1900's  3; 1910's  5; 1920's  11; 1930's  40; 1940's  28; 1950's  24; 1960's  23; 1970's  9; 1980's  4 to date, with this opinion being the fifth. Similarly, cases citing Story, Commentaries on Equity Jurisprudence (1884) are as follows: 1900's  1; 1910's  0; 1920's  1; 1930's  5; 1940's  2; 1950's  2; 1960's  0; 1970's  2; 1980's  1 to date with this opinion being the second.