675 So.2d 1385 (1996)
381651 ALBERTA, LTD., Appellant,
v.
279298 ALBERTA, LTD., Lawrence John Adams, and Eljada Holdings, Ltd., Appellees.
No. 94-1653.
District Court of Appeal of Florida, Fourth District.
July 10, 1996.
*1386 Charles Wender of Smith, Smith & Wender, P.A., Boca Raton, for appellant.
Garry M. Glickman, of Glickman, Witters and Marell, P.A., for Appellee-27298 Alberta, Ltd.
SHAHOOD, Judge.
Appellee, 279298 Alberta, Ltd. ("27 Alberta"), is a Canadian corporation which received by assignment a $2,375,811.17 judgment against an individual named L.J. Adams ("Adams"). All of Adams' personal property, as well as two condominiums, one which Adams and his wife used as a winter residence and one which Adams' son lived in on a permanent basis, were held by Eljada Holdings, Ltd. ("Eljada"), a family trust corporation. Eljada paid all of Adams' and his wife's personal living and entertainment expenses as well as the bills for Adams' family members and obligations of other corporations which Adams controlled. After the entry of the judgment, Eljada transferred the mortgages on the condominiums to Adams' brother's company, 381651 Alberta, Ltd. ("38 Alberta"), allegedly as security for a loan.
Thereafter, 27 Alberta filed suit against Adams, Eljada, and 38 Alberta seeking an order setting aside the transfers as fraudulent conveyances and mandating the sale of the real property to satisfy the judgment. The trial court struck 38 Alberta's demand for jury trial. Following a two-day bench trial, the trial court found that Eljada was the alter ego of Adams and that since the entry of the money judgment, Adams has evaded personal liability by titling all of his personal assets in the name of Eljada. In addition, the trial court found that the mortgages were fraudulent conveyances, and ordered that they be set aside. Consequently, the court ordered that the lien of the judgment held by 27 Alberta would attach to all of Eljada's assets, including the mortgages. The trial court determined that the alleged loan from 38 Alberta to Eljada actually represented payment to Adams for his ownership interest in another corporation which his brother owned.
*1387 On appeal, 38 Alberta raises three issues, none of which has merit. Because there is competent evidence in the record to support the trial court's findings of fact, we affirm the final judgment, see Shaw v. Shaw, 334 So.2d 13 (Fla.1976), but write briefly to address the jury trial issue.
We acknowledge the law that, if possible, questions regarding the right to a jury trial should be resolved in favor of jury trial. King Mountain Condominium Ass'n v. Gundlach, 425 So.2d 569 (Fla. 4th DCA 1982). The right to jury trial, however, applies only to legal and not equitable causes of actions. Id. Florida courts have held that an action to set aside a conveyance of real property is cognizable in equity. Raulerson v. Metzger, 375 So.2d 576 (Fla. 5th DCA 1979); Bryant v. Small, 271 So.2d 808 (Fla. 3d DCA 1973). Conversely, an action seeking a money judgment is traditionally one at law. See Hutchens v. Maxicenters, U.S.A., 541 So.2d 618, 622-23(Fla. 5th DCA 1988). The issue in the instant case becomes, then, whether 27 Alberta's action to set aside the conveyances is one at law or equity given the fact that 27 Alberta seeks also that the proceeds from the sale of the property be applied to satisfy the money judgment.
Because of the paucity of state decisional law on point, a review of various federal decisions is helpful. In Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the United States Supreme Court addressed the issue of whether a fraudulent conveyance of a determinate sum of money is an action at law. Although the issue of fraudulent conveyances of real property was not before the Granfinanciera court, it stated in dicta that actions to recover real property are "quintessentially equitable actions." 492 U.S. at 47, 109 S.Ct. at 2791. In spite of that acknowledgement, again in dicta, the court reaffirmed its earlier holding in Whitehead v. Shattuck, 138 U.S. 146, 11 S.Ct. 276, 34 L.Ed. 873 (1891), that actions for "the recovery and possession of specific real or personal property, or for the recovery of a money judgment" are at law. Id., n. 5.
Thus, based on the dicta in Granfinanciera, subsequent courts held that actions to recover fraudulently conveyed real property are at law. See, e.g., In re Southeast Connectors, Inc., 113 B.R. 85 (S.D.Fla.1990)(defendant in an action to recover a specific parcel of real property alleged to have been fraudulently transferred by the bankrupt company was entitled to a jury trial.) The following from Southeast Connectors explains the rationale behind such a holding:
[t]he right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes to obtain is its possession and enjoyment; and in a contest over title both parties have a constitutional right to call a jury.
Id. We distinguish the case sub judice from Whitehead and its progeny since, here, 27 Alberta does not seek possession and enjoyment of the property, and title is not in dispute.
More factually similar to the instant case is Mission Bay Campland, Inc. v. Sumner Financial Corp., 72 F.R.D. 464 (M.D.Fla.1976), wherein a judgment creditor who had previously been unable to execute and satisfy its judgment sought to have set aside certain fraudulent transfers by the judgment debtor. Id. at 467. The transferees of the assets were impled, and they requested a jury trial. Id. at 464. As to the propriety of the circuit court's denial of the request, the district court held that "[b]ecause the equitable remedy of annulment for a fraudulent transfer of assets was sought, there was no federal constitutional right to a jury trial." Id. at 468 (citing Hyde Properties v. McCoy, 507 F.2d 301 (6th Cir.1974)). In so holding, the court reasoned that
[a] judgment-creditor, by virtue of its judgment, obtains an equitable claim against the assets of the judgment-debtor that have been transferred fraudulently to third persons. Equity will afford relief by setting aside the effect of the fraudulent transfer insofar as it affects the right of the judgment-creditor to execute and satisfy its judgment. To that extent only the equitable remedy correspondingly affects the claim of right by third parties to the judgment-debtor's assets. To all others, the third-party transferees' claim of right remains valid and effective because there *1388 has been no general adjudication of their title to the assets (admittedly a question at law). Adler v. Fenton, 65 U.S. [24 How.] 407, 411-12, 16 L.Ed. 696 (1860); Kane v. Sesac, Inc., 54 F.Supp. 853, 861-62 (S.D.N.Y.1943). Df. (sic) In re Swan-Finch Oil Corp. v. Levin, 58 Cust.Ct. 487, 269 F.Supp. 386, 391 (S.D.N.Y.1967).
Id.
Similarly, in the case at bar, 27 Alberta, as a judgment creditor, has an equitable claim against Adams' assets. As such, an action to set aside the fraudulent conveyance of Adams' real property is equitable in nature since it does not result in a general adjudication of title to the property.
Section 56.29, Florida Statutes (1993), provides the statutory basis for the avoidance of any gift, transfer, assignment or other conveyance made in an attempt to hinder or defraud creditors. In Allied Industries International, Inc. v. AGFA-Gevaert, Inc., 688 F.Supp. 1516 (S.D.Fla.1988), aff'd, 900 F.2d 264 (11th Cir.Fla.1990), the court noted that the purpose of the statute is to provide creditors with "a swift, summary disposition of issues," while "preserv[ing] the equitable character of both proceedings and the remedies available." Id. at 1517 (citations omitted). The court stated that when the remedies for satisfaction of a judgment are inadequate, parties may resort to equitable remedies such as utilizing supplemental proceedings to reach property not subject to levy. Id. (citing Gantz v. First Nat'l Bank of Miami, 138 So.2d 367 (Fla. 3d DCA 1962)).
Thus, we hold that the situation in the instant case mandates the same results as those reached in Mission Bay and Allied Indus. We believe also that that is the outcome contemplated by section 56.29. Indeed, having been thwarted in its efforts to satisfy its judgment by Adams' "shell game," 27 Alberta opted to pursue other means of reaching Adams' property. We hold that such an action is equitable in nature, and that no right to jury trial attaches.
STONE, J., concurs.
PARIENTE, J., concurs specially with opinion.
PARIENTE, Judge, concurring specially.
The creditor, having an inadequate remedy at law, sought to invoke the equitable powers of the trial court to set aside a mortgage which he alleges to be a fraudulent conveyance. I agree that appellants are not entitled to a jury trial under the Florida Constitution. I write, however, to explain my reasoning, which is based not only on a historical analysis of the cause of action, but also on the nature of the remedy sought vacating a duly recorded mortgage.
Article I, Section 22 of the Florida Constitution simply provides that the "right to trial by jury shall be secure and remain inviolate." Yet the constitutional right to a jury trial does not extend to every type of civil action. The guarantee extends only to those categories of actions in which the right to a jury trial was enjoyed as of 1845, the date that Florida's first constitution became effective. See In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433, 434 (Fla.1986); State v. Webb, 335 So.2d 826, 828 (Fla.1976).
Determining whether there were jury trials in particular types of actions at common law (and in particular in Florida prior to 1845) can be a daunting task because there is no single reliable historical source which neatly categorizes the causes of actions as they existed in the eighteenth and early nineteenth centuries. The task is further complicated by the evolution of causes of action over time and, more recently, by the merger of courts of law and courts of equity. See generally King Mountain Condominium Ass'n v. Gundlach, 425 So.2d 569 (Fla. 4th DCA 1982). However, because our Florida constitutional guarantee has been interpreted by our supreme court as predicated on whether the right to trial by jury existed for the particular cause of action as of 1845, we must endeavor to ascertain the historical status of the cause of action.[1]
*1389 When faced with the issue of whether there is a constitutional right to a jury trial for a particular cause of action, review is not limited to the search for an eighteenth-century analogy. A second and more important step in the analysis requires a reviewing court to examine the remedy sought and determine whether it is legal or equitable in nature. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989). As stated in Tull v. United States, 481 U.S. 412, 417-18, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987):
To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must examine both the nature of the action and of the remedy sought. First, we compare the statutory action to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.
(Citations omitted). In Tull, the United States Supreme Court explained why the second stage of the analysis is more important than the first:
We need not rest our conclusion on what has been called an "abstruse historical" search for the nearest 18th-century analog. We reiterate our previously expressed view that characterizing the relief sought is "[m]ore important" than finding a precisely analogous common-law cause of action in determining whether the Seventh Amendment guarantees a jury trial.
Id. at 421, 107 S.Ct. at 1837 (citations omitted). Although the seventh amendment guarantee is binding only upon federal courts,[2] our supreme court has "recognized that federal decisions construing [the seventh amendment] are helpful and persuasive in construing this state's constitutional provision of like import." In re Forfeiture of 1978 Chevrolet Van, 493 So.2d at 434-35.
The federal test for determining the right to a jury trial is often phrased as whether "the action involves rights or remedies of the sort traditionally enforced in an action at law, rather than an action in equity or admiralty." King Mountain, 425 So.2d at 571 (quoting Pernell v. Southall Realty, 416 U.S. 363, 375, 94 S.Ct. 1723, 1729, 40 L.Ed.2d 198, 209 (1974)). This subsumes both the first and second tier of traditional analysis. Similarly, the Florida test has been stated to be "whether the party seeking a jury trial is trying to invoke rights and remedies of the sort traditionally enforceable in an action at law." Id.
The reason that it is important to look at the remedy sought is that historically, jury trials did not extend to "equitable demands enforced in courts of chancery." See Hawkins v. Rellim Inv. Co., 92 Fla. 784, 788, 110 So. 350, 351 (1926). As stated in Robbins v. Section 3 Property Corp., 609 So.2d 670, 671-72 (Fla. 3d DCA 1992), approved, 632 So.2d 596 (Fla.1993):
[I]t is well established that where the right or remedy is equitable in nature there is no right to a jury trial. Hawkins v. Rellim Inv. Co., 92 Fla. 784, 110 So. 350 (Fla.1926); Hathorne v. Panama Park Co., 44 Fla. 194, 32 So. 812 (Fla.1902); Hughes v. Hannah, 39 Fla. 365, 22 So. 613 (Fla. 1897); Wiggins v. Williams, 36 Fla. 637, 18 So. 859 (Fla.1896). Thus, actions in equity do not fall within the protection of Article I, Section 22, of the Florida Constitution (1968) guaranteeing the right to a jury trial.
In turning to the first tier of analysisa search for the historical analogy to fraudulent conveyance actionsthere appears to be a distinction at common law, depending on whether the conveyance involved money and chattel or land and intangibles. In Granfinanciera, the United States Supreme Court observed that, historically, actions to recover fraudulent conveyances were conducted before a jury if money or chattel were involved (actions for money had and received, trover *1390 or replevin), but not if land or intangibles were involved:
"[W]hether the trustee's suit should be at law or in equity is to be judged by the same standards that are applied to any other owner of property which is wrongfully withheld. If the subject matter is a chattel, and is still in the grantee's possession, an action in trover or replevin would be the trustee's remedy; and if the fraudulent transfer was of cash, the trustee's action would be for money had and received. Such actions at law are as available to the trustee to-day [sic] as they were in the English courts of long ago. If, on the other hand, the subject matter is land or an intangible, or the trustee needs equitable aid for an accounting or the like, he may invoke the equitable process, and that also is beyond dispute." 1 G. Glenn, Fraudulent Conveyances and Preferences § 98, pp. 183-184 (rev. ed.1940) (footnotes omitted).
492 U.S. at 44, 109 S.Ct. at 2791.
In this case, the creditor sought relief to avoid the fraudulent transfer pursuant to chapter 726 of the Florida Statutes, known as the Uniform Fraudulent Transfer Act. See §§ 726.101-.201, Fla. Stat. (1995). Section 56.29, Florida Statutes (1995), also provides a means for a creditor to seek to void a fraudulent transfer; however, that section is limited only to post-judgment proceedings brought in the court in which the original judgment was obtained. See Regent Bank v. Woodcox, 636 So.2d 885 (Fla. 4th DCA 1994).
It is significant that the remedies set forth in section 726.108 are equitable remedies. Section 726.108(1)(c) specifically provides that "[s]ubject to the applicable principles of equity and in accordance with applicable rules of civil procedure," a creditor may obtain an injunction, appointment of a receiver or "[a]ny other relief the circumstances may require." (Emphasis supplied). As explained by our supreme court, in construing a predecessor statute to Chapter 726, "a bill in equity may be brought to reach property alleged to have been fraudulently put out of reach of an execution." Hewitt v. Punta Gorda State Bank, 117 Fla. 126, 126, 157 So. 420, 420 (1934). Traditionally referred to as a "creditor's bill," our supreme court has described the proceeding as
one brought by a creditor who has secured a judgment at law, and who has in vain attempted to satisfy it at law, but after finding he cannot do so sues in equity for the purpose of subjecting property of the debtor to the payment of his judgment which cannot be so subjected by execution at law. The nature, purpose, and scope of a creditor's bill is to bring into exercise the equitable powers of the court to enforce the satisfaction of a judgment by means of an equitable execution, because execution at law cannot be enforced. It is in the nature of an equitable execution, or equitable relief, which is granted solely on the ground that there is no remedy at law.

Hillsborough County v. Dickenson, 125 Fla. 181, 185, 169 So. 734, 736 (1935) (emphasis supplied); see also Armour Fertilizer Works v. First Nat'l Bank, 87 Fla. 436, 440-41, 100 So. 362, 364 (1924). Our supreme court has consistently characterized a creditors' suit as an equitable remedy because it is predicated on the allegation that no remedy at law exists or that the remedy at law is incomplete or inadequate. See Stewart v. Manget, 132 Fla. 498, 503-04, 181 So. 370, 373 (1938).
While no case has directly addressed the right to a jury trial in proceedings under section 726.108, it has been held that there is no right to a jury trial in summary proceedings authorized by section 56.29. See Dezen v. Slatcoff, 66 So.2d 483 (Fla.1953); see also Ferguson v. State Exch. Bank, 264 So.2d 867 (Fla. 1st DCA 1972). This holding is supported by the fact that proceedings supplementary to execution are summary proceedings specifically authorized by law and limited in scope. Dezen, 66 So.2d at 485. Proceedings brought pursuant to section 56.29 are a "substitute for a creditor's bill and provide a means of subjecting to the lien of a judgment creditor property conveyed by his judgment debtor for the purpose of delaying, hindering or defrauding the creditor." Ferguson, 264 So.2d at 868; cf. Brownstone, Inc. v. Miami Nat'l Bank, 165 So.2d 262 (Fla. 3d DCA 1964). But see State ex rel. Phoenix Tax Title Corp. v. Viney, 120 Fla. 657, 664, 163 So. 57, 60 *1391 (1935) (in proceedings supplementary to execution, third party who in good faith asserted claim to disputed assets in his possession would be entitled to jury trial of issues of fact where party otherwise enjoyed right at common law).
Because an action under chapter 726 is not a summary proceeding, Dezen alone cannot be relied on to affirm the denial of the jury trial. However, from a historical perspective, creditor's bills have been considered equitable remedies handled in courts of chancery. In addition, the subject matter of the fraudulent transfer in this case is a mortgage on land, or more specifically, a mortgage on a condominium, which historically has been resolved in courts of equity. See Granfinanciera; Robinson v. Springfield Co., 21 Fla. 203 (1885) (suit in equity required to reach land purchased with debtor's money in another's name). Lastly, and most important to the analysis, by seeking to set aside a mortgage, the creditor sought an equitable remedy against the debtor.
Accordingly, I concur in the majority's decision to affirm the trial court's denial of a jury trial in this case.
NOTES
[1] The observations of Justice Oliver Wendell Holmes seem particularly apt in this regard: "It is revolting to have no better reason for a rule of law than that it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply persists from blind imitation of the past." Oliver W. Holmes, Path of the Law, 10 Harv. L.Rev. 457, 469 (1897).
[2] The seventh amendment provides in pertinent part: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...."