NORTHCUTT, Judge.
Dr. Clayton Bredlau sued his former employer, Gene E. Myers, P.A. (the “P.A.”), for unpaid wages, and in January 1991 he obtained a judgment in the amount of $115,-218.73, plus interest. Bredlau’s effort to collect his judgment led to a June 1993 action to set aside allegedly fraudulent transfers from the P.A to Dr. Gene Myers, Dr. William Crick, Pharr Up the Crick, Inc., and Florida Cardiac Consultants, Inc. (“FCCI”). In this appeal, Myers, Crick, and Pharr Up challenge the judgment against them in the latter action, which set aside certain payments they received from the P.A As we will explain, we affirm the finding that the payments to Myers and Crick were fraudulent transfers, but we reverse the amount of the transfers to be set aside. We reverse the judgment against Pharr Up in its entirety.
In December 1994, while this suit was pending in the lower court, the P.A filed for bankruptcy. V. John Brook, the P.A.’s bankruptcy trustee, was added as a plaintiff on November 13, 1995, by order of the trial *609 court. Brook filed no pleadings of his own; instead, the action was tried on Bredlau’s third amended complaint. The pertinent counts of the complaint were based solely on chapter 726, Florida Statutes (1991). The first count claimed that the transfers to the defendants were fraudulent because the P.A. did not receive a “reasonably equivalent value” for them, and that the P.A. “was engaged or was about to be engaged in a business or a transaction for which the remaining assets were unreasonably small.” See § 726.105(l)(b), Fla. Stat. (1991). Count II charged that the transfers were voidable because they were made with “actual intent to hinder, delay or defraud” Bredlau. See § 726.105(l)(a), Fla. Stat. (1991). The relief sought was “[a] judgment avoiding the transfers or obligations made by Defendant Myers, P.A., or others, to the extent necessary to satisfy Plaintiffs claims.... ”
The evidence at trial showed that Myers and Crick practiced medicine together for a number of years. During the period relevant to this ease they were involved in two practice groups; the P.A. until January 3, 1992, and FCCI from January 1992 onward. Myers was the president, sole director and sole shareholder of the P.A. Crick was an employee, but shared profits equally with Myers. In January 1992, Crick formed FCCI. He and Myers began practicing as FCCI that month, one day after they ceased working for the P.A. Myers, Crick, and two other doctors are equal shareholders in FCCI. Myers and Crick each are fifty percent shareholders in Pharr Up, a corporation that owns the medical equipment the doctors use in their practice. Pharr Up leased this equipment to the P.A. through January 1992; thereafter Pharr Up leased the equipment to FCCI.
The alleged fraudulent transfers to Myers and Crick were distributions of profits they received from the P.A. in the early months of 1992. The doctors defended these payments on the basis that they were for services previously rendered to the P.A. The challenged transfer to Pharr Up concerned a payment from the P.A. for rental of medical equipment for the month of January 1992. Because the P.A. was no longer a going medical practice during that month, the plaintiffs contended the payment to Pharr Up was fraudulent.
After the close of evidence, the trial court instructed the jury:
Now, you are instructed that the Plaintiff, V. John Brook, Junior, as trustee stands in the shoes of Bredlau with respect to his claims and any defenses to those claims. If you determine that the P.A. fraudulently transferred assets to any of the Defendants, you must then determine the value of the asset at the time it was transferred. The Court will, thereafter, enter a judgment equal to the value of the asset or equal to the amount due on the judgment, whichever is less. The Court will also, if appropriate, reduce the judgment as to any sum you attribute to Bredlau’s failure to mitigate his damage or loss and any other adjustment as the equities may require. (Jury instruction 19)
The jury found that the defendants received fraudulent transfers from the P.A. in the following amounts: Myers — $401,936.33; Crick — $200,968.17; and Pharr Up— $6,782.26. It found no liability on the part of FCCI. The jury also found that Bredlau failed to mitigate his damages in the amount of $10,064.99.
Trustee Brook subsequently filed a motion for entry of judgment in the entire amount of the jury’s verdict. In its final judgment, the court noted that the fraudulently transferred funds would become part of the bankruptcy estate. Because certain fees and costs are paid from the bankruptcy estate before a creditor receives payment, the court found that if it limited its judgment to the amount of Bredlau’s prior judgment against Myers, P.A., Bredlau might receive less than full satisfaction of his claim. The court determined that section 726.108(l)(c)3., Florida Statutes (1991) granted broad equitable powers to award “any relief the circumstances may require.” The court therefore ordered that all the P.A.’s fraudulent transfers to the three defendants were set aside “to the extent necessary to fully satisfy the claim of Clayton Bredlau, M.D. as determined by the bankruptcy court.”
*610 We first address the alleged fraudulent transfer to Pharr Up. The P.A.’s office manager testified that the P.A. had made a monthly equipment rental payment to Pharr Up in approximately the same amount each month. The only payment the plaintiffs challenged was one made on January 2,1992, for the equipment rental during that month. They did not establish that this January payment was greater than any of the previous payments. No evidence showed that Pharr Up did not provide the leased medical equipment to the P.A. in exchange for the rental payment.
The plaintiffs failed to present sufficient evidence to send this count to the jury under either a theory of actual fraud based on section 726.105(l)(a) or as a constructive fraud pursuant to section 726.105(l)(b). Because actual fraud is difficult to prove, courts look to “badges of fraud” as evidence of fraudulent intent. See § 726.105(2)(a)-(k), Fla. Stat. (1991); Amjad Munim, M.D., P.A. v. Azar, 648 So.2d 145, 152 (Fla. 4th DCA 1994); Johnson v. Dowell, 592 So.2d 1194, 1197 (Fla. 2d DCA 1992). The only statutory badge of fraud present in this transfer was that the sole shareholder of the P.A. was also half owner of Pharr Up. A single badge of fraud will not generally support a finding that a conveyance was made with actual fraudulent intent. Johnson, 592 So.2d at 1197.
To establish constructive fraud, the plaintiff must show that the debtor did not receive reasonably equivalent value in exchange for the transfer. The plaintiffs here presented no evidence that the value of the use of the medical equipment was not reasonably equivalent to the P.A.’s payment to Pharr Up. In fact, the evidence showed that the P.A. had paid approximately this amount to Pharr Up monthly for an extended period. The real crux of the plaintiffs’ argument is that the P.A. closed down the day after it made the January 1992 payment to Pharr Up, and therefore did not use the equipment. According to the plaintiffs, FCCI received the benefit of the rented equipment. While these facts could support an argument that the P.A. fraudulently transferred a month’s worth of use of the equipment to FCCI, the jury exonerated that corporation. Be that as it may, the evidence did not support a finding that there had been a fraudulent transfer to Pharr Up. The trial court erred in failing to direct a verdict in its favor. We reverse the judgment as it relates to Pharr Up the Crick.
In support of their contentions that the court should have directed a verdict in their favor, Myers and Crick argue that the P.A.’s payments to them were for services rendered and thus, the P.A. received reasonably equivalent value; that they acted in good faith; and that the plaintiffs failed to prove their damages with the requisite specificity. While the defendants presented evidence on all these points, the plaintiffs produced sufficient contradictory evidence that the issue was properly sent to the jury. See State, Department of Transp. v. Young, 539 So.2d 596 (Fla. 2d DCA 1989). We will not disturb the jury’s finding that the payments were fraudulent transfers.[1]
The trial court’s error was in its decision to set aside the transfers “to the extent necessary to fully-satisfy the claim of Clayton *611 Bredlau, M.D., as determined by the bankruptcy court.” In essence, the court required the transferees to bear any expense of the bankruptcy estate, including trustee’s fees and possibly attorney’s fees.
This determination was contrary to the pleadings in this case and to the trial court’s own instruction to the jury. In Jury Instruction 19, quoted previously, the court told the jurors that the trustee was in Bred-lau’s shoes. Bredlau could not, and did not, seek to set aside the conveyance for the benefit of the bankruptcy estate. See In re Primack, 81 B.R. 711, 712 (Bankr.S.D.Fla.1987). Under the bankruptcy code, a trustee may avoid a fraudulent transfer in its entirety if the avoidance of the transfer benefits the bankruptcy estate. See 11 U.S.C. §§ 544, 550. The bankruptcy code gave Trustee Brook the choice to remove the state court action to bankruptcy court, to file an adversary proceeding in bankruptcy, or to intervene in the state court action. In re Kaufman & Roberts, Inc., 188 B.R. 309, 314 (Bankr.S.D.Fla.1995). He chose to enter Bredlau’s state court suit, but did not plead his avoidance powers under the bankruptcy code; he merely stepped into Bredlau’s shoes and pleadings.
The cause of action in this case was based solely on Florida law. Under section 726.109(2), the creditor may recover “judgment for the value of the asset transferred, as adjusted under [section 726.109] subsection 3, or the amount necessary to satisfy the creditor’s claim, which ever is less.” The court’s instruction to the jury tracked this language. The jury found that over $600,000 had been fraudulently conveyed; but the evidence established that, at the time of trial, the amount of Bredlau’s judgment was $183,-716.27. Therefore, the statute required the entry of judgment in’ the amount of the claim.
The trial court, however, determined that it was inequitable for Bredlau to bear the costs of the P.A.’s voluntary decision to enter bankruptcy. The court noted that section 726.108(1) (c)3 gave it equitable powers to “grant any relief the circumstances may require.” But this power is subject to the “limitations in s. 726.109_” § 726.108(1), Fla. Stat. (1993). Section 726.109(3) allows the court to adjust the amount of the judgment “as the equities may require,” but this subsection is applicable only when the judgment is based on the “value of the asset transferred.” This scenario would only occur when the amount of the claim exceeded the value of the asset. That is not the case here. Consequently, the court was limited by section 725.109 to awarding judgment based on the amount of Bredlau’s claim.
Wé reverse the court’s order setting aside the transfers to the extent necessary to satisfy Bredlau’s claim as determined by the bankruptcy court, and remand with directions to enter judgment in favor of the bankruptcy trustee in the amount of $183,-716.27, plus interest, less the amount the jury attributed to Bredlau’s failure to mitigate his damages, $10,064.99.[2]
Our decision gives rise to an additional issue. The jury found that Myers had received over $400,000 in fraudulent payments, and that Crick had received over $200,000. Either of these sums is sufficient to satisfy Bredlau’s claim. The question then becomes how much of the claim should each be required to pay. Perhaps the jurors should have been asked to determine whether the value of the assets transferred exceeded Bredlau’s claim, and, if so, to apportion the amount of the judgment among the parties who received the transfers. We cannot fault the trial court for its procedure, however. Very little Florida case law addresses a jury determination of a fraudulent transfer claim, and no standard instructions have been promulgated on this issue.
Moreover, none of the parties objected to Jury Instruction 19. We infer from their acceptance of the instruction that Myers and Crick agreed that the court, rather than the jury, would determine the dollar amount of each’s liability, if any, for Bredlau’s claim. This inference is bolstered by their arguments at the post-trial motions. Crick’s *612 counsel asserted that the parties should be proportionately liable based on the dollar amount of the transfers the jury attributed to each. Myers’s counsel contended that the parties should be jointly and severally liable. The trial court never resolved this issue because it determined that it should set aside the entire amounts of the transfers. Because we have instructed the court to reduce the amount of the judgment to the amount of Bredlau’s claim, the court must determine what portion of the liability is to be borne by Myers and what portion by Crick. We remand to the trial court to decide this issue.
Judgment affirmed in part, reversed in part, and remanded.
CAMPBELL, A.C.J., and THREADGILL, J., concur.

. In its amended judgment, the trial court noted that because it was awarding equitable relief, the jury’s verdict may have been advisory. However, the court did specifically adopt the verdict as the findings of fact in this case. The issue of whether a jury trial is'appropriate in a fraudulent .transfer action was recently addressed in 381651 Alberta, Ltd. v. 279298 Alberta, Ltd., 675 So.2d 1385 (Fla. 4th DCA 1996). That case involved fraudulent conveyances of mortgages. The action was instituted as a summary proceeding under section 56.29, Florida Statute (1993). The Fourth District held that the plaintiff had no right to a jury trial because an action to set aside a fraudulent conveyance of real property was equitable in nature, and because the summary proceeding under section 56.29 did not contemplate trial by juiy. While not deciding the issue, we note that a jury trial was probably appropriate in this case because the transfer sought to be set aside was a cash payment, and section 726.109(2)(a), Florida Statutes (1993) permits a money judgment to be entered against the first transferee of the fraudulently conveyed assets. See Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 44, 109 S.Ct. 2782, 2791, 106 L.Ed.2d 26 (1989) (if action is for fraudulent transfer of cash, history supports a jury trial); cf. 381651 Alberta, 675 So.2d at 1388-1391 (Pariente, J., specially concurring) (where statutory remedies are equitable, jury trial not permitted).

. The plaintiffs have not cross-appealed the propriety of the jury's determination on the issue of mitigation of damages.