746 So.2d 1198 (1999)
BALDWIN SOD FARMS, INC., a foreign corporation, Appellant,
v.
Hugh D. CORRIGAN and James P. Corrigan, Jr., as Co-Trustees of the Patricia Corrigan Grantor Reserved Income Trust and the J. Pat Corrigan Grantor Reserved Income Trust, Appellees.
No. 99-1538.
District Court of Appeal of Florida, Fourth District.
December 15, 1999.
*1199 Ira C. Hatch of Hatch & Doty, P.A., Vero Beach, for appellant.
Lewis W. Murphy Jr., Moss, Henderson, Blanton & Lanier, P.A., Vero Beach, for appellees.
PER CURIAM.
Baldwin Sod Farms, Inc. ("Baldwin") appeals an order evicting Baldwin and directing the clerk to issue a writ of possession to appellees, Hugh D. Corrigan and James P. Corrigan, Jr., as co-trustees of the Patricia Corrigan Grantor Reserved Income Trust and the J. Pat Corrigan Reserved Income Trust ("Corrigan"). Baldwin argues that the circuit court lacked subject matter jurisdiction over this eviction and erred in denying its demand for a jury trial. Appellant further argues that the appellees failed to properly serve the 3-day notice and give Baldwin thirty days to cure default, pursuant to the terms of the lease.
On February 27, 1996, Baldwin and Corrigan entered into an 8-year lease and option to purchase agreement whereby Baldwin would lease from Corrigan approximately 940 acres of land in Indian River County to be used exclusively as a sod farm. Under the agreement, Baldwin would plant, harvest, and sell the sod and make monthly payments to Corrigan, pursuant to a formula in the lease based on the amount of sod harvested. Baldwin was also required to pay a portion of the taxes on the land, obtain insurance, and provide a monthly accounting to Corrigan regarding the amount of sod harvested.
Paragraph 15 of the lease provided:

DEFAULT AND REMEDIES: Lessee shall be in default under this Lease if Lessee abandons or vacates the Lands prior to the expiration of any of them without the prior written consent of Lessor; or after fifteen (15) days written notice by Lessor to Lessee fails to pay the rental as it becomes due, or fails to timely cure any other term or condition of this Lease....
Paragraph 19 provided that:

*1200 [a]ny notice required to be given under this Agreement or by statute shall be deemed given by delivery of written notice in person or by U.S. Registered Mail to either party at the address given above, or to such other address as parties may designate in writing.
The address for Baldwin specified in the lease was: Duane V. Baldwin, c/o Baldwin Farms, Stockbridge, Michigan 49285.
Paragraph 30 provided:

MINIMUM RENT: If at any time after the year 1996, and throughout the period of time covered by this Agreement, should the amount of annual rent paid by Lessee to Lessor, as stipulated in Paragraph 3, drop below the rate of an average of $150.00 per year per acre of planted sod for any two calendar year period, this Agreement may be terminated after thirty (30) days written notice from Lessor to Lessee, with Lessee having the opportunity to cure the short fall by paying to Lessor the deficit during the thirty (30) day notice period....
In May or June 1998 Baldwin stopped paying rent to Corrigan. Apparently around the same time, Duane Baldwin passed away, and his son, Mark, took over the sod farm operations. On January 5, 1999, Corrigan's attorney sent a letter by certified mail (rather than registered mail) to Duane Baldwin at his home address, in Vero Beach, and a copy by regular mail to Baldwin Sod Farm, Inc.'s Stockbridge, Michigan address. The letter advised that there had been no rental payments nor reporting of sod sales since May 1998 and that Corrigan was "not sure how much sod has been harvested from August of 1998 to the end of the year but for the purpose of determining the rent, we are assuming that the minimum rent provisions of Section 30 of the Lease apply." The letter further advised that Baldwin owed Corrigan $98,923.54, representing the minimum rent due, the amount due for Bahia Sod, interest, and real property taxes. The letter advised Baldwin that "[u]nder Section 15 of the Lease, you have 15 days from the mailing of this letter within which to make payment.... Failure to make timely payment will constitute a default under the lease."
On January 18, 1999, Corrigan sent a follow-up letter by certified mail to Duane Baldwin at his home address, and by regular mail to Baldwin's Michigan address, advising that payment had not been made as requested in the January 5, 1999 letter and warning that, if payment was not made by January 20, 1999, Baldwin would be in default. The letter further advised that if payment was not made by January 20, 1999, "this letter shall serve as notice... to vacate the premises no later than... January 20, 1999."
Baldwin then filed for bankruptcy. Corrigan sought relief from the automatic stay provisions of 11 U.S.C. § 362(a). On April 2, 1999, the bankruptcy court granted relief from the automatic stay to allow Corrigan "to pursue all of their rights, in rem, with respect to the real property that is the subject of the Lease ...., including but not limited to eviction and repossession of the real property." Corrigan then filed suit in circuit court. However, because Baldwin was improperly served, the court granted Baldwin's motion to quash service of process on April 16, 1999.
On April 21, 1999, Corrigan attempted to serve a three-day notice letter under section 83.20, Florida Statutes, by hand delivery through a process server. The letter was addressed to Mark Baldwin and his wife at the sod farm address in Vero Beach. The process server was unable to locate Mark Baldwin and therefore posted the letter on the door of his home in Vero Beach and on a sign at the sod farm. Additionally, on that date, the process server personally served Mark Baldwin with a letter advising Baldwin that "[i]n accordance with Paragraph 15 of the Lease, and to the extent it applies, Section 83.20(3), Fla. Stat.," Baldwin was in default and had 15 days from delivery to cure the default.
*1201 Corrigan then filed an amended complaint, which was served on Baldwin on April 27, 1999. The amended complaint set forth two counts: count I sought eviction, and count II sought a temporary injunction, alleging that Baldwin was removing sod and other unidentified personal property without payment to Corrigan, "resulting in irreparable injury and leaving CORRIGAN without an adequate remedy at law in that damages sustained cannot be calculated and/or verified due to BALDWIN SOD's removal." The complaint stated that the bankruptcy court had provided relief from the stay to allow Corrigan to seek in rem relief. Although the complaint did not seek damages, it referenced the exhibits to the complaint, which were letters setting forth the amounts claimed to be due to Corrigan. The ad damnum clause of count I requested, inter alia, that the court retain jurisdiction to determine damages sustained by Corrigan, including, but not limited to, double rental value under section 82.071, Florida Statutes.
On May 4, 1999, Baldwin filed and served its Answer, Affirmative Defenses, Defensive Motions, a Counterclaim for Betterment, and a Demand for Jury Trial. One of its affirmative defenses was that the circuit court lacked subject matter jurisdiction. On May 5, 1999, the court held a hearing on Baldwin's motion to dismiss for lack of subject matter jurisdiction. Baldwin argued that the case belonged in the county court because it was an eviction proceeding, that the amount in controversy did not exceed $15,000, and that Corrigan had not adequately pled a basis for injunctive relief. The court denied the motion to dismiss on the ground that the statutory 3-day notice, attached as Exhibit 5 to the complaint, demanded rent in excess of the jurisdictional amount and, alternatively, the allegations for injunctive relief sufficiently alleged irreparable harm and an inadequate remedy at law.
On May 6, 1999, the court held a non-jury trial on the eviction count and ordered that the counterclaim for betterment be considered at a later date. At the outset, Baldwin reminded the court that it had filed a demand for a jury trial and objected to proceeding without a jury. Baldwin said that it would pay any costs required by section 51.011, Florida Statutes (1997), in connection with its demand for a jury trial. Corrigan argued that Baldwin was not entitled to a jury trial, because eviction is a summary proceeding under section 51.011 and "an equitable relief proceeding" and that neither section 51.011 nor Chapter 83 of the Florida Statutes provides for a jury trial in an eviction proceeding. Corrigan argued further that Baldwin had failed to mention the jury trial issue when the parties appeared before the court the day before and that "this delay tactic should be denied." The court agreed that Baldwin was not entitled to a jury trial and tried the case without a jury.
During his testimony, Mark Baldwin acknowledged receiving, by certified mail, the January 5 and January 18, 1999 letters informing him he had 15 days to pay the amounts due. He also acknowledged receiving the April 21, 1999 3-day notice letter that the process server had posted on his front door and the other April 21, 1999 letter advising Baldwin that he had 15 days to cure default. Baldwin admitted that rent was not paid after June 1998. He testified that he had recently offered to pay, but Corrigan refused payment. Baldwin also testified that, contrary to Corrigan's allegation, Baldwin had made a monthly accounting of the sod harvested.
Hugh Corrigan testified that Baldwin had failed to pay rent or to account for sod after May 1998 and that Baldwin also had not paid the real property taxes. Corrigan also testified that the 15-day demand letter to Baldwin was based on ¶ 15 of the lease, providing for 15 days to cure default, and that he calculated the rent due by utilizing the minimum rent provisions of ¶ 30 of the lease.
The court found as follows: that Corrigan properly served the 3-day notice on *1202 Baldwin; that Baldwin was personally served with the 15-day demand letter; that Corrigan was only required to give Baldwin 15 days rather than 30 days to cure default; that Baldwin failed to pay rent since June 1998; that, although Baldwin testified that he offered to pay the past due amounts, Baldwin failed to present evidence as to how much he offered and also failed to pay that money into the court registry, and that Baldwin failed to pay taxes on the property. The court entered a judgment in favor of Corrigan on the eviction count, directed the clerk to issue a writ of possession, and deemed the request for temporary injunction to be moot based on the eviction. The court retained jurisdiction to determine damages. Thereafter, Baldwin was evicted.
In this appeal, Baldwin argues that the circuit court lacked subject matter jurisdiction; that the court reversibly erred in failing to grant Baldwin a jury trial; that Corrigan failed to properly serve the statutory 3-day notice as required under the terms of the lease; and that Corrigan failed to properly serve Baldwin with the notice to cure default and to give Baldwin 30 days to cure default as required by ¶ 30 of the lease.

Subject matter jurisdiction
Section 34.011, Florida Statutes, provides that:
(1) The county court shall have jurisdiction concurrent with the circuit court to consider landlord and tenant cases involving claims in amounts which are within its jurisdictional limitations....
(2) The county court shall have exclusive jurisdiction of proceedings relating to the right of possession of real property and to the forcible or unlawful detention of lands and tenements, except that the circuit court also has jurisdiction if the amount in controversy exceeds the jurisdictional limits of the county court or the circuit court otherwise has jurisdiction as provided in s. 26.012....
Section 34.01(4), Florida Statutes (1997), provides that county court judges may hear all matters in equity involved in any case within the jurisdictional amount of the county court, except as otherwise provided by Florida law. Section 26.012 provides that the circuit court has exclusive original jurisdiction in, inter alia, all actions at law not cognizable by the county court and in all cases in equity. § 26.012(2)(a), (c), Fla. Stat. (1997)
Baldwin submits that the circuit court lacked subject matter jurisdiction because the amended complaint did not seek damages and did not allege that the amount in controversy exceeded $15,000 the jurisdictional amount specified in § 34.01(1)(c)4, Florida Statutes. Citing Alexdex Corp. v. Nachon Enterprises, Inc., 641 So.2d 858, 860 (Fla.1994), Baldwin acknowledges that the county courts and circuit courts have concurrent jurisdiction over matters in equity, including injunctions. Baldwin argues, however, that the amended complaint failed to properly plead a cause of action for injunctive relief, and, therefore, the county court had exclusive jurisdiction over this case.
The lower court denied Baldwin's motion to dismiss for lack of subject matter jurisdiction, because the complaint requested the court to reserve jurisdiction to determine damages and the statutory 3-day notice, attached as Exhibit 5 to the complaint, demanded rent in excess of the jurisdictional amount of the county court. Alternatively, the circuit court found that the complaint adequately set forth a claim for injunctive relief. In arguing error by the lower court, Baldwin relies on Williams v. Gund, 334 So.2d 314, 315 (Fla. 2d DCA 1976), which held that the circuit court lacked subject matter jurisdiction because the complaint did not allege the amount in controversy. The second district said that "[t]he complaint must contain a statement of the grounds upon which the court's jurisdiction depends, RCP 1.110(b), in this case, the amount in controversy. It is well settled that where *1203 the jurisdiction of the circuit court is dependent on the amount in controversy the test is the amount claimed and put into controversy in good faith." Id. See also Jozu Enters., Inc. v. Muller, 400 So.2d 831 (Fla. 3d DCA 1981) (allegations in the ad damnum clause were insufficient to confer jurisdiction on circuit court to enter judgment of possession).
Although Corrigan was precluded by the bankruptcy court from seeking damages, it did ask the court to retain jurisdiction to consider damages after termination of the bankruptcy proceeding and it incorporated by reference the 3-day notice letter demanding $91,348.50, an amount exceeding the jurisdictional limit. As Corrigan points out, since the statutory notice was an exhibit to the complaint, its contents were incorporated into the four corners of the complaint by reference. See McClurkin v. Parrish Volvo, Inc., 317 So.2d 85 (Fla. 1st DCA 1975); Fla. R. Civ. P. 1.130(b) (any exhibit attached to a pleading shall be considered a part thereof for all purposes). We find that the circuit court properly exercised subject matter jurisdiction based upon the complaint allegations of an amount in controversy exceeding the jurisdictional limit.
We further find that the court had jurisdiction based on its finding that the complaint adequately set forth a claim for injunctive relief. The circuit court was only called upon to decide whether the allegations sufficiently pled a claim for injunctive relief, not whether Corrigan would ultimately prevail on its claim for injunctive relief. See, e.g., Brewer v. Clerk of Circuit Court, Gadsden County, 720 So.2d 602 (Fla. 1st DCA 1998) (all well-pled allegations of the complaint are taken as true); Mullray v. Barnett Bank of South Florida, N.A., 638 So.2d 199 (Fla. 3d DCA 1994) (same).

Right to Jury Trial
We find, however, that the court erred in denying Baldwin a jury trial. As noted above, appellee Corrigan argued below that there is no right to a jury trial in a summary eviction proceeding under sections 83.20 and 51.011, Florida Statutes. Chapter 83, which governs nonresidential tenancies, is silent as to the right to a jury trial. Section 83.21 provides that the landlord seeking removal of the tenant shall file a complaint and is entitled to the summary procedure set forth in § 51.011. Section 51.011, which allows for an expedited, summary proceeding in certain circumstances, provides in pertinent part:
(3) JURY.If a jury trial is authorized by law, any party may demand it in any pleading or by a separate paper served not later than 5 days after the action comes to issue. When a jury is in attendance at the close of pleading or the time of demand for jury trial, the action may be tried immediately; otherwise, the court shall order a special venire to be summoned immediately. If a special venire be summoned, the party demanding the jury shall deposit sufficient money with the clerk to pay the jury fees which shall be taxed as costs if he or she prevails.
§ 51.011(3), Fla. Stat. This statute merely allows for a jury trial when "authorized by law." Whether eviction law and procedure provide for a jury trial is the question we must resolve.
In arguing that it was entitled to a jury trial, Baldwin relies upon State ex rel Jennings v. Peacock, 126 Fla. 743, 171 So. 821 (1937); CKN Airways, Inc. v. Flagler County, 441 So.2d 1103 (Fla. 5th DCA 1983), rev. dismissed, 447 So.2d 886 (Fla. 1984); and Moffett v. MacArthur, 291 So.2d 134 (Fla. 4th DCA 1974). Jennings held that the county court erred in denying the tenant's request for a jury trial in an eviction proceeding because the tenant failed to deposit in court a sufficient sum of money to pay the jurors' fees. Relying on sections 3 and 4 of the Declaration of Rights of the Florida Constitution and on the 1881 eviction statute in effect at the timewhich provided for a jury trial in eviction proceedingsthe court held that the tenant's right to a jury trial was absolute *1204 and could not be conditioned on the payment of jury fees. 171 So.2d at 821.
Jennings did not squarely hold that one is entitled to a jury trial in an eviction proceeding; rather it relied on a statute that is no longer in effect. Moffett, which began with the premise that a jury trial is authorized for an eviction, relied upon Jennings in holding that the lower court erred in denying a tenant's demand for jury trial in an eviction proceeding, based on the tenant's failure to deposit costs for the jury fees. Moffett, 291 So.2d at 135. Moffett cited section 22 of Article I of the Florida Constitution, which does not explicitly provide for a jury trial in eviction proceedings, but, rather, provides generally that "[t]he right of trial by jury shall be secure to all and remain inviolate..." Moffett does not contain an analysis as to whether, under Florida law, a tenant in an eviction case is entitled to a jury trial. The same is true of Remax East Realty, Inc. v. Goodco Properties, 481 So.2d 1281 (Fla. 4th DCA 1986), which held that absent a waiver of the right to a jury trial by some affirmative action by the tenants, they were entitled to a jury trial when they were sued by their landlord for the rent.
Under Florida law, whether one is entitled to a jury trial depends upon whether the right was recognized at common law, at the time the Florida Constitution was adopted. 381651 Alberta, Ltd. v. 279298 Alberta, Ltd., 675 So.2d 1385 (Fla. 4th DCA 1996). As we recognized in Alberta, "[t]he right to jury trial ... applies only to legal and not equitable causes of action." Id. at 1386. Judge Pariente, specially concurring, explained:
Article I, Section 22 of the Florida Constitution simply provides that the "right to trial by jury shall be secure and remain inviolate." Yet the constitutional right to a jury trial does not extend to every type of civil action. The guarantee extends only to those categories of actions in which the right to a jury trial was enjoyed as of 1845, the date that Florida's first constitution became effective. See In re Forfeiture of 1978 Chevrolet Van, 493 So.2d 433, 434 (Fla.1986); State v. Webb, 335 So.2d 826, 828 (Fla.1976).
Determining whether there were jury trials in particular types of actions at common law (and in particular in Florida prior to 1845) can be a daunting task because there is no single reliable historical source which neatly categorizes the causes of actions as they existed in the eighteenth and early nineteenth centuries. The task is further complicated by the evolution of causes of action over time and, more recently, by the merger of courts of law and courts of equity....
When faced with the issue of whether there is a constitutional right to a jury trial for a particular cause of action, review is not limited to the search for an eighteenth-century analogy. A second and more important step in the analysis requires a reviewing court to examine the remedy sought and determine whether it is legal or equitable in nature....
Id. at 1388-1389 (some citations omitted).
We have been unable to find any Florida authority directly addressing (1) whether at common law one was entitled to a jury trial in an eviction proceeding and (2) whether an eviction proceeding is equitable or legal. The United States Supreme Court addressed the Seventh Amendment right to a jury trial in an eviction case in Pernell v. Southall Realty, 416 U.S. 363, 94 S.Ct. 1723, 40 L.Ed.2d 198 (1974). The Court concluded that eviction proceedings are legal rather than equitable, stating:
This Court has long assumed that actions to recover land, like actions for damages to a person or property, are actions at law triable to a jury. In Whitehead v. Shattuck, 138 U.S. 146, 151, 11 S.Ct. 276, 34 L.Ed. 873 (1891), for example, we recognized that:
`(i)t would be difficult, and perhaps impossible, to state any general rule *1205 which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law ...; but this may be said, that where an action is simply for the recovery and possession of specific, real, or personal property, or for the recovery of a money judgment, the action is one at law.'
Id. at 370, 94 S.Ct. 1723 (emphasis added).
Under the Seventh Amendment to the United States Constitution, as with the corresponding state constitutional right to a jury trial, the court must determine whether the right was available at common law. In a lengthy analysis of the issue, the Supreme Court observed that "every action recognized in 1791 for the recovery of possession of property carried with it the right to jury trial." Id. at 376, 94 S.Ct. 1723. The Court acknowledged that at common law, a landlord's right to recover past due rent was pursued by way of ejectment or a writ of entry rather than eviction. The Court also recognized that a present day action for ejectment differs from one for eviction. Id. at 372-373, 94 S.Ct. 1723. Nevertheless, the Court said:
Whether or not a close equivalent to [the District of Columbia eviction statute] existed in England in 1791 is irrelevant for Seventh Amendment purposes, for that Amendment requires trial by jury in actions unheard of at common law, provided that the action involves rights and remedies of the sort traditionally enforced in an action at law, rather than in an action in equity or admiralty.
The proceeding established by [the eviction statute], while a far cry in detail from the common-law action of ejectment, serves the same essential functionto permit the plaintiff to evict one who is wrongfully retaining possession and to regain possession himself. As one commentator has noted, while statutes such as [this] were `unknown to the common law ... (t)hey are designed as statutes for relief, not to create new causes of action. The evident intention is to give this summary relief in those cases where ... the action of ejectment would lie.
Id. at 375, 94 S.Ct. 1723 (citations and footnotes omitted).
Thus, Pernell establishes that this court, in Moffett, was correct in its premise that one is entitled to a jury trial in an eviction proceeding.
Corrigan argues that the trial court nevertheless correctly denied Baldwin a jury trial because there were no issues of fact to be decided by a jury. We disagree. Baldwin's answer and affirmative defenses raised issues that required factual determination, including whether the 3-day notice was properly served, whether the 15-day or 30-day notice of default was required, and whether such notice of default was properly and timely given. Additionally, although Mark Baldwin admitted the failure to pay rent, he testified that he offered to make payment but Corrigan rejected payment. Furthermore, he testified that, contrary to Corrigan's contention, Baldwin did provide a monthly accounting of harvested sod. These matters raised factual issues that could properly be considered by a jury. See Bergh v. Canadian Universal Ins. Co., 216 So.2d 436 (Fla.1968) (whether insured's delay in giving insurer notice of claim amounted to breach of policy was a factual issue); Hoffman v. Terry, 397 So.2d 1184 (Fla. 3d DCA 1981) (because terms of contract were ambiguous, it was proper to subject issue to jury for resolution of factual matter).[1]
Corrigan also argues that Baldwin waived the right to jury trial by failing to *1206 remind the court, at the hearing on Baldwin's motion to dismiss held on May 6, 1999, that Baldwin wanted a jury trial. However, after making a demand for jury trial within 5 days after suit was brought, as required by section 51.011(3), Florida Statutes, Baldwin was not required to reassert its desire for a jury trial. Its failure to do anything further did not constitute a waiver of its right to a jury trial. See Remax E. Realty v. Goodco, supra (absent a waiver of right to jury trial by some affirmative action by the tenants, they were entitled to a jury trial when they were sued by their landlord for the rent).
In light of our conclusion that the lower court reversibly erred in denying Baldwin a jury trial, we find it unnecessary to consider Baldwin's remaining claims that Corrigan failed to properly serve the 3-day notice and failed to give Baldwin 30 days to cure default, as required by ¶ 30 of the lease.
Based on the foregoing, we reverse and remand for jury trial.
REVERSED.
GUNTHER, POLEN and TAYLOR., JJ., concur.
NOTES
[1] The Court in Pernell noted that

[i]n the average landlord-tenant dispute, where the failure to pay rent is established and no substantial defenses exist, it is unlikely that a defendant would request a jury trial. And, of course, the trial court's power to grant summary judgment where no genuine issues of material fact are in dispute provides a substantial bulwark against any possibility that a defendant will demand a jury trial simply as a means of delaying an eviction. More importantly, however, we reject the notion that there is some necessary inconsistency between the desire for speedy justice and the right to jury trial.... Our courts were never intended to serve as rubber stamps for landlords seeking to evict their tenants, but rather to see that justice be done before a man is evicted from his home."
416 U.S. at 383-85, 94 S.Ct. 1723.